Rockingham, }
Dec. 26, 1907. }

NEW  HAMPTON  INSTITUTION  *v.*  NORTHWOOD  SCHOOL  DISTRICT  *& a.*

Pupils who have received instruction under a contract between their parents and an institution of learning are not liable for tuition fees, if they neither requested such instruction nor promised to pay therefor.

An institution of learning which furnishes instruction under an agreement to look to a school district for compensation cannot maintain assumpsit against the pupil's parent for the tuition fees.

Under chapter 96, Laws 1901, a school district which does not maintain a
  high school is only liable for the tuition of children who have not received
  instruction in a high school or one of corresponding grade, and for such
  time as is required for the completion of one full course.

Assumpsit. Five actions, in which the plaintiff, an approved
school within the meaning of section 4, chapter 96, Laws 1901,
seeks to recover in each suit the tuition of one child for the
school year of 1903–04. The defendants in each case are the
school district in which the pupil lived with his father, the father,
and the child. All the children had taken a four years' course at
an approved school before their parents sent them to New Hamp-
ton Institution, one having graduated in 1901, two in 1902, and
two in 1903. The school district paid nothing for the pupil who
graduated in 1901, but paid a year's tuition for those who grad-
uated in 1902 and two years' tuition for those who graduated in
1903.

At the April term, 1907, of the superior court, the question of
the liability of the defendants, or any of them, was transferred at
the request of the parties, without a ruling, by *Pike*, J.

*Felker & Gunnison*, for the plaintiffs.

*Burnham, Brown, Jones & Warren*, for Northwood school district.

*Eastman, Scammon & Gardner*, for the other defendants.

Young, J. As the facts are understood, the instruction for
which the New Hampton Institution seeks to recover was fur-
nished to the children under a contract between the Institution
and the children's parents. If that is the fact, the Institution can
recover from the parents, but not from the children; for it is not
found that the children either requested the Institution to instruct
them, or promised to pay for the instruction furnished. If, how-
ever, the instruction was not furnished by virtue of any contract,
express or implied, between the Institution and the parents,—that
is, if it was understood and agreed between them that the Institu-
tion should look to Northwood school district for compensation,—
it cannot maintain these actions against the parents. *Concord
Coal Co.* v. *Ferrin*, 71 N. H. 33.

But however that may be, neither the Institution nor the chil-
dren's parents can maintain an action against the defendant dis-
trict by virtue of any provisions of the common law; and neither
the Institution nor the parents can recover from the district unless
section 2, chapter 96, Laws 1901, gives a right of action to one or

both of them. That section is as follows: " If any town in which a high school or school of corresponding grade is not maintained neglects or refuses to pay for tuition as provided in the preceding section, such town shall be liable therefor to the parent or guardian of the child furnished with such tuition if the parent or guardian has paid the same, or to the town or city furnishing the same, in an action of contract." The section gives parents, and school districts which maintain approved schools, an action against school districts which neglect or refuse to pay tuition for which they are made liable by section 1 of the act, but it does not give one to academies and approved schools as such. *Sanborn Seminary* v. *Newton*, 73 N. H. 109. Consequently the New Hampton Institution cannot maintain an action against the defendant district; but since it can maintain an action against the parents, and they can recover of the district if they pay the Institution, the district's liability for the tuition has been considered.

The children had all graduated from an approved school before their parents sent them to the New Hampton Institution. The question of the district's liability therefore depends on whether the legislature intended, by the enactment of chapter 96, Laws 1901, to compel school districts in which approved schools are not maintained to pay the tuition of children residing therein as long as they choose to attend an approved school elsewhere, or whether the liability imposed is limited to the payment of the tuition of children who have not graduated from such a school, for such time as is necessary to enable them to take one full course. In considering this question it is immaterial when the children graduated, or who paid their tuition. The material question is whether they are such children as the legislature intended to benefit. The question therefore is: Did the legislature intend to impose an unlimited liability on such districts for the tuition of children residing therein, or did it intend to limit liability to the payment of the tuition of children who have not graduated from an approved school? It is clear that the duty was imposed on such districts because of their failure to furnish such instruction as it was thought should be available to every child in the state; in other words, one purpose of the act is to standardize the instruction which districts must provide for the benefit of the children residing therein. Since that is the purpose of the act, it is improbable that the legislature intended to compel districts failing to maintain approved schools to provide more instruction than is demanded of districts in which such schools are maintained. In the absence of evidence as to the fact, it cannot be assumed that the legislature intended to make such districts liable for the tuition of all the children living in them, for

all the time they choose to attend an approved school, unless districts which maintain schools approved for only one course are liable for the tuition of children who have taken that course, while they take another course at another approved school. It is not likely that the legislature would compel a district too poor to maintain an approved school to do more for the education of its children than is required of a district which is able to maintain such a school. It is certain that a district which maintains a school with only one course of instruction cannot be compelled to pay the tuition of children who, having taken that course, attend an approved school elsewhere. P. S., *c.* 89, *ss.* 9–13; Laws 1899, *c.* 77; Laws 1901, *c.* 96; Laws 1903, *c.* 118; Laws 1905, *c.* 19; *Ib.*, *c.* 90.

If, therefore, the legislature did not intend to impose upon districts which fail to maintain approved schools a greater duty in respect to furnishing instruction than that imposed on districts which do maintain them, the question in this case is not whether a district which maintains a school with more than one approved course can be compelled to permit children residing therein to take more than one course at that school, but is whether a district which maintains a school approved for only one course can be compelled to pay the tuition of children who, having taken that course, attend an approved school elsewhere.

Whatever duty is imposed on districts which fail to maintain approved schools is created by chapter 96, Laws 1901, as amended by chapter 118, Laws 1903. If such districts can be compelled to furnish instruction which districts maintaining approved schools are not required to provide, it is by virtue of these enactments. Section 1 of the act provides that "any town not maintaining a high school or school of corresponding grade shall pay for the tuition of any child who with parents or guardian resides in said town, and who attends a high school or academy in the same or another town or city in this state, and the parent or guardian of such child shall notify the school board of the district in which he resides of the high school or academy which he has determined to attend." Section 4 provides that "by the term 'high school' or 'academy,' as used in this act, is understood a school having at least one four years' course, properly equipped and teaching such subjects as are required for admission to college, technical school, and normal school, such high school or academy to be approved by the state superintendent of public instruction as complying with the requirements of this section, and said superintendent is authorized to approve a school maintaining any part of such course for the part so maintained." If the language of section 1, considered by itself, is capable of a con-

struction which imposes an unlimited liability upon districts failing to maintain approved schools in respect to the payment of the tuition of children who attend such schools elsewhere, it is clear, when the section is read in connection with section 4, that such was not the sense in which the legislature used it. Section 4 defines the duty imposed by section 1; and if the language of section 4 is given its ordinary meaning, the duty imposed by section 1 is limited to paying the tuition of children while they are obtaining a high-school education. Districts which maintain schools approved for a part of a high-school course—say for two years—are only liable for tuition of children for the remaining two years of the course. The fact that districts which maintain schools so approved are only liable for tuition while the children complete the course is conclusive that the legislature intended to limit the duty imposed by the act to the payment of the tuition necessary to enable the children to graduate from an approved school. Since this is so, the act is not intended to benefit children who have graduated from such a school; and consequently it must be held that the Northwood school district is not liable for the tuition of these children, either to the New Hampton Institution, or to the children's parents.

*Case discharged.*

All concurred.