ASSOCIATED SCHOOLS OF INDEPENDENT DISTRICT NO. 63 OF HECTOR v. SCHOOL DISTRICT NO. 83 OF RENVILLE COUNTY.[1]

June 27, 1913.

Nos. 18,089—(185).

**State's authority over municipalities.**

1. The state has the power to require of its municipal subdivisions the performance of duties of state concern, and to demand that they raise money and disburse the same for such purposes.

**Public schools — duty of legislature.**

2. The maintenance of public schools is a matter, not of local, but of state concern. The state Constitution provides that "it shall be the duty

[1] Reported in 142 N. W. 325.

of the legislature to establish a general and uniform system of public schools" and that "the legislature shall make such provisions, by taxation or otherwise, as * * * will secure a thorough and efficient system of public schools in each township in the state." These provisions were inserted, not as a grant of power, but as a mandate to the legislature, prescribing as a duty the exercise of an inherent power.

**Same — power of legislature.**

3. The legislature may require a school district of the state to furnish public school facilities, and it may provide that if such district does not supply the required facilities it shall pay tuition to another district furnishing such facilities to its pupils. A law of this state providing that one or more rural school districts may become associated with a high school for the purpose of affording education in agriculture, manual training and home economics, including cooking and sewing, and further providing that such associated schools may charge nonresident pupils a tuition which shall be a charge against the school district in which such nonresident pupils reside, is within the legislative power.

**Same.**

4. The power of the legislature to impose a system of public school education upon local communities is not limited to the common branches. If the legislature sees fit to require public education of boys in that which pertains to successful agriculture, and of girls in that which pertains to successful housekeeping, it has the power to do so.

**Same — Constitution.**

5. Such legislation does not violate the constitutional requirement of equality of taxation so long as the law operates alike on all persons and property similarly situated. For similar reasons it does not violate the requirement of a "uniform system of public schools."

**Taxation in school districts.**

6. The funds to pay such an obligation may be raised by taxation. There is ample power in school districts to raise money for all necessary purposes.

**Right of action.**

7. An action may be maintained on such a demand. The fact that previous statutes relating to school districts provide only for actions on contracts or for acts or omissions in the nature of tort, is not important. This act creates an obligation, and a right to its enforcement arises by necessary implication.

Action in the district court for Renville county to recover $157.50

for instruction furnished certain nonresident pupils in the agricultural and industrial departments of defendant's high school. From an order Powers, J., overruling defendant's demurrer to the complaint, it appealed. Affirmed.

*Rieke & Hamrum,* for appellant.

*O. A. Allen* and *J. M. Freeman,* for respondent.

HALLAM, J.

Chapter 247, p. 291, Laws 1909, as amended by chapter 82, p. 97, Laws of 1911, provides that any high school, graded school or consolidated rural school having satisfactory rooms and equipment and having shown itself fitted by location and otherwise to give training in agriculture, may, upon application to the state high school board of this state, be designated to maintain an agricultural and industrial department to consist of courses in agriculture, manual training, and home economics, including cooking and sewing.

The act further provides that one or more school districts maintaining rural schools may become associated with any such high school, and in such case the high school shall be known as the central school. Section 3 provides that such associated schools may charge nonresident pupils, attending and receiving instruction in such department, tuition, to be fixed by the board, not exceeding $2.50 per month for each such pupil; and that said tuition so fixed shall be a legal charge against the school district in which said nonresident pupil resides, and shall be paid by such school district out of the funds of such district.

The complaint alleges that, pursuant to these acts, certain common school districts of Renville county became associated with Independent School District No. 63, of Hector, under the name "Associated Schools of Independent School District No. 63 of Hector, Renville County, Minnesota" for the purpose of maintaining an agricultural and industrial department; that said Independent School District No. 63 is a duly formed and organized high school and is the central school of plaintiff, and was, prior to the association of said schools, designated by the proper authorities of the state to maintain

an agricultural and industrial department; that plaintiff had fixed a charge of $2.50 a month for tuition and instruction furnished in said departments to nonresident pupils; that during the school year, from September 11 to June 12, plaintiff furnished instruction in said departments to eight pupils, resident within defendant's district, and this action is brought to recover the sum of $2.50 a month for the time of attendance of each of said pupils.

Defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled and defendant appealed.

It is contended that to tax defendant district for tuition of pupils residing therein and attending plaintiff's school creates unequal taxation; that it constitutes the taking or appropriation of the money of the district without compensation and without due process of law, and without a hearing to defendant and for a purpose it may not desire. These contentions cannot be sustained. They are based on too narrow a view of the power of the legislature over its municipal subdivisions and over matters of education.

1. It has never been doubted that the state has the power to require of its municipal subdivisions the performance of duties of state concern, and to demand that they raise money by taxation and disburse the same for such purposes. These municipal subdivisions are mere auxiliaries of the state, created by the state as a means of exercising its political power in an orderly manner. Being thus subordinate agencies of the state, they are subject to the control and direction of the legislature in matters of internal government, and the legislature may require such public duties and functions to be performed by them as fall within the general scope and objects of municipal organizations. Commissioners of Laramie County v. Commissioners of Albany County, 92 U. S. 307, 23 L. ed. 552; County of Mobile v. Kimball, 102 U. S. 691, 703, 26 L. ed. 238; Washer v. Bullitt County, 110 U. S. 558, 4 Sup. Ct. 249, 28 L. ed. 249; County Commrs. of Talbot County v. County Commrs. of Queen Anne's County, 50 Md. 245; Marengo v. Coleman, 55 Ala. 605, 607.

2. The maintenance of public schools is a matter, not of local, but

122 M.—17.

of state concern. When the Constitution of Minnesota was adopted, its framers inserted these two provisions:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature to establish a general and uniform system of public schools." Section 1, article 8.

"The legislature shall make such provisions by taxation or otherwise, as, with the income arising from the school fund, will secure a thorough and efficient system of public schools in each township in the state." Section 3, article 8.

The object of these provisions is "to insure a regular method throughout the state, whereby all may be enabled to acquire an education which will fit them to discharge intelligently their duties as citizens of the republic." Board of Education v. Moore, 17 Minn. 391, 394 (412, 416). These provisions were not a grant of power to the legislature, for all the powers there mentioned would have existed without such grant. They were inserted as a mandate to the legislature prescribing as a duty the exercise of this inherent power.

3. This statute is within the legislative power. This state has always imposed upon each community the burden of providing for the elementary education of its children. It has required school districts to maintain common schools for at least five months in the year (R. L. 1905, § 1337) and to provide by taxation sufficient revenue therefor (R. L. 1905, § 1324). The power of the legislature to make such requirement has never been doubted. It is equally within the power of the legislature to provide that if a district does not see fit to furnish school facilities of its own, it shall pay some other district for the furnishing of such facilities.

4. If this were a question of common school education, this proposition would probably not be questioned. But the power of the legislature to impose a system of public school education upon local communities is not limited to common branches alone. It is the judgment of the legislature that this state should now require public education in something more than the common branches, that it should provide for the public education of boys in that which pertains to successful agriculture, and of girls in that which pertains to successful

housekeeping. The question whether the population and wealth of the state are such as to warrant such measures is a legislative and not a judicial question, a question of legislative policy and not of legislative power.

5. There is nothing in the statute in question that violates the constitutional requirement of equality of taxation. The law operates alike on all persons and property similarly situated. This is all that is required. Walston v. Nevin, 128 U. S. 578, 9 Sup. Ct. 192, 32 L. ed. 544. Nor does it violate the constitutional requirement of a "uniform system of public schools." In Curryer v. Merrill, 25 Minn. 1, 6, 33 Am. Rep. 450, the court said:

"The rule of uniformity contemplated by this constitutional provision which the legislature is required to observe, has reference to the system which it may provide, and not to the district organizations that may be established under it. These may differ in respect to size, grade, corporate powers and franchises, as may seem to the legislature best, under different circumstances and conditions; but the principle of uniformity is not violated, if the system which is adopted is made to have a general and uniform application to the entire state, so that the same grade or class of public schools may be enjoyed by all localities similarly situated, and having the requisite conditions for that particular class or grade."

The view we have taken of this case is amply sustained by authority.

In Boggs v. School Township, 128 Iowa, 15, 102 N. W. 796, an act of the legislature of Iowa provided for the establishment and maintenance of county high schools. It was held that a provision requiring a school corporation to pay for the tuition of its pupils for attending such a high school without its consent is constitutional. The court said, at page 17, "that the legislature has the power to provide for a system of public schools * * * and that it may provide for the maintenance of such schools by taxation is as well settled by authority. It has the same power to provide for the establishment and maintenance of a county high school that it has to provide for schools of a lower grade, and it may unquestionably designate the means and manner of raising the revenue necessary for its maintenance."

In City v. Fountain Prairie, 134 Wis. 593, 115 N. W. 111, the statutes of Wisconsin authorized persons of school age, who may reside in any town or incorporated village not within a free high school district, to attend a free high school, and provided for the payment and collection of tuition from the city, town or village from which such persons are admitted. It was held that this statute was a valid exercise of legislative power.

In Fiske v. Inhabitants, 179 Mass. 571, 61 N. E. 260, an act of the legislature of Massachusetts provided that any town of less than 500 families, in which a public high school or a school of corresponding grade is not maintained, shall pay for the tuition of any properly qualified child who resides in said town and who attends the high school of another town or city. It was held that this statute was constitutional and that plaintiff was entitled to recover from the town in which he resided for the tuition of his child at the high school of another town, although defendant refused to approve of the attendance.

In Ricker v. Inhabitants, 101 Me. 553, 64 Atl. 948, a statute of Maine provided that any youth who resides within a town which does not support and maintain a free high school giving at least a four year's course may, when prepared to pursue such four year's course, attend any high school having such course, and in such case the tuition, not to exceed $30 annually, shall be paid by the town in which he resides. It was held that a school receiving such pupils might maintain an action under this statute against the town in which such pupils reside, although the statute failed to specify the remedy which should be employed to compel performance by the town of its statutory duty.

In New Hampton v. Northwood, 74 N. H. 413, 68 Atl. 538, there was involved an act providing that any town not maintaining a high school shall pay for the tuition of any child who with parents or guardian resides in said town, and who attends a high school or academy in the same or another town or city in this state. The liability of districts to respond under that statute was affirmed.

We find no authority to the contrary. High School v. Lancaster County, 60 Neb. 147, 82 N. W. 380, 49 L.R.A. 343, 83 Am. St. 525, cited by counsel for appellant, is not in point. The statute there con-

sidered provided that nonresident pupils might attend high schools free of charge, and that an arbitrary sum of 75 cents per week for each pupil should be paid out of the general fund of the *county* for such tuition, which sum might in any case fall below or exceed the cost of education. It was held that the act violated the constitutional requirement of uniformity of taxation, but the decision was based on the ground that the tuition was to be paid by the whole county in which such pupils resided, and that the want of uniformity between the taxpayers of the county who resided within and those who resided without the high school district arose from the fact that the tuition charge was not based upon the expense of education.

6. It is urged that there is no statute under which the defendant is authorized to levy taxes to pay tuition of pupils in the schools of other districts. It is true there was no such provision in statutes previous to the one under consideration. This act in itself creates the obligation to pay, and confers by necessary implication both the power and the duty to raise money for that purpose. The power is ample in the school district to raise money by taxation for all necessary purposes. Revised Laws 1905, § 1324, provides in terms that the school board shall submit at the annual school meeting an estimate of the expenses of the district for the coming year for a school "and for such other specified purposes as the board may deem proper."

7. It is urged that this action cannot be maintained because there is no provision in the statutes for an action upon any such demand; that R. L. 1905, § 1458, the only express provision on the subject, provides for actions only upon a contract or for acts or omissions in the nature of tort. But it is clear that the act of 1911 creates an obligation on the part of defendant. The creation of the obligation carries with it by necessary implication the right to its enforcement. There is ample provision for payment of a judgment when lawfully obtained. Revised Laws 1905, § 1459.

Our conclusion is that the complaint states a cause of action and that the order overruling the demurrer should be affirmed.

So ordered.