IN RE TAXES FOR 1961 ON REAL ESTATE OWNED BY
COLD SPRING GRANITE COMPANY IN COUNTY
OF STEARNS.
IN RE TAXES FOR 1961 ON PERSONAL PROPERTY OWNED
BY COLD SPRING GRANITE COMPANY IN COUNTY
OF STEARNS.
IN RE TAXES FOR 1961 ON REAL ESTATE OWNED BY
GRANIT-BRONZ, INC., IN COUNTY OF STEARNS.

136 N. W. (2d) 782.

July 2, 1965—Nos. 39,408, 39,409, 39,410.

*Russell & Willenbring, Gordon Rosenmeier,* and *John E. Simonett,* for appellants.

*Robert W. Mattson,* Attorney General, *Linus J. Hammond,* Assistant Attorney General, and *Roger J. Nierengarten,* County Attorney, for respondent.

FRANK T. GALLAGHER, C.

Appeals from an order of the district court denying appellants' motion for amended findings or a new trial.

The parties have stipulated to the facts, the stipulation being received in evidence subject to certain objections as to relevancy and

materiality. Minn. St. 124.51 provides a method for the taxation, collection, and payment of tuition by school districts not maintaining classified secondary schools. In brief (1) the county superintendent certifies to the county board the number of resident pupils of each district in the county having no classified secondary school or vocational-technical school who attended a classified secondary school in another district, and the tuition charged by the district furnishing the instruction; (2) the auditor of the county of the pupil's residence pays from the county school tax fund to the district furnishing the instruction the tuition charged for such instruction; (3) the state aid paid by reason thereof is paid to the county so paying the tuition; (4) the tuition paid that is in excess of the aid received is made up by levying and collecting that amount from the districts maintaining no secondary schools. When collected, such amount goes into the school tax fund to be used as aforesaid.

Appellant Cold Spring Granite Company is a corporation organized and existing under the laws of Minnesota with its main office at Cold Spring in Stearns County. It is the owner of real and personal property in School District No. 1923 of Stearns County, in which it conducts its granite business. Appellant Granit-Bronz, Inc., is also a corporation organized and existing under the laws of Minnesota with its main office at Cold Spring and is the owner of real estate in District No. 1923, in which it conducts its granite business.

During the 1960-61 school year, District No. 1923 maintained no classified secondary school or area vocational-technical school supported by public funds. As of July 1, 1961, there were 138 school districts in Stearns County without public classified secondary schools, and 11 school districts in said county maintaining public classified secondary schools. The 138 school districts without secondary schools had more than 1,840 resident pupils who in the 1960-61 school year attended secondary schools outside of their district of residence. There was within District No. 1923 a privately maintained secondary school, and there were also other privately maintained secondary schools in Stearns County, located both in districts maintaining classified secondary schools and in districts not

maintaining classified secondary schools. There resided in District No. 1923, 154 students attending secondary schools. All of these students attended the private secondary school maintained within the district except two students, one of whom attended the eighth grade at Central Junior High School in St. Cloud and the other, the tenth grade at St. Cloud Technical High School, both of these schools being maintained by Independent School District No. 742 of Stearns County. The tuition cost for these two students was $1,080.90.

In the fall of 1961 District No. 1923 tendered to District No. 742 the sum of $1,080.90 in full payment of these tuition costs and this payment was refused by the School Board of District No. 742. In that same fall the county superintendent of schools certified to the County Board of Commissioners the two students who attended secondary school in District No. 742, and certified that the tuition charged by that district was the sum of $1,080.90. In addition, the county superintendent also certified to the county board the tuition charges for resident students of other districts in the county not maintaining a classified secondary school who attended a secondary school in another district of Stearns County. The county board, pursuant to such certification and under the provisions of Minn. St. 124.51, then determined "the total sum to be paid on account of such tuition" and levied the tax, and the county auditor thereupon spread the tax "on the property in the districts of the county which maintains no classified secondary school."

The mill rate for the county tuition tax for the year 1961 in Stearns County as determined by the county board was 51 mills. This resulted in a county tuition tax for the year 1961 in District No. 1923 of $38,795.85, and resulted in a county tuition tax on the property of Cold Spring Granite Company of $3,939.99, and on the property of Granit-Bronz, Inc., of $125.15. Cold Spring Granite Company paid under protest 50 percent of the real estate taxes levied for the year 1961 against its property, as permitted by Minn. St. c. 278, and then instituted action in the district court to recover the percentage of tax so paid and to obtain a determination that the part of the tax levied and assessed for the county tuition tax was

illegal. Pursuant to § 277.02, it protested the validity of the portion of the tax levied and assessed on its personal property for the county tuition tax. Granit-Bronz, Inc., also brought an action alleging the invalidity of the portion of tax levied and assessed against its property for the county tuition tax.

By agreement of the parties and with the consent of the court, the three actions were consolidated for trial to the court, the evidence offered and received and the objections made by the parties to the evidence as offered applying equally to the three actions. Findings of fact, conclusions of law, and order for judgment for respondent were filed on May 21, 1963, upholding § 124.51 as constitutional and sustaining the tax. Thereafter an alternative motion for amended findings or a new trial was made by the above-named companies. On November 4, 1963, the court issued an order denying appellants' motion and these appeals were taken from that order.

The following legal issue is raised by both parties on appeal: Is the so-called county tuition tax under Minn. St. 124.51, as construed and applied, invalid as being contrary to Minn. Const. art. 9, § 1, and art. 1, §§ 2, 7, and 8,[1] and to the equal protection and due process clauses of U. S. Const. Amend. XIV?

We shall not attempt to set out in detail all of § 124.51. The pertinent portions provide:

"Subdivision 1. It is the duty of the county superintendent in each county annually before July 1 to certify to the county board the number of resident pupils of each district in the county wherein no classified secondary school or area vocational-technical school was maintained in the preceding school year, who attended a classified secondary school in another district * * *.

"Subd. 2. The auditor of the county of the pupil's residence shall

---

[1]Briefly, Minn. Const. art. 9, § 1, directs that all taxes shall be uniform upon the same class of subjects; art. 1, § 2, provides that no one shall be disfranchised; art. 1, § 7, states that no one shall be held to answer for a criminal offense or be deprived of his property without due process of law; art. 1, § 8, provides that each person shall be entitled to a legal remedy.

thereupon cause to be paid out of the county school tax fund hereby created to each such district which furnished such instruction the tuition so charged for such instruction.

"Subd. 3. State apportionment, and special state aid paid by the state on account of such secondary school or area vocational-technical school instruction shall be paid to the county which pays such secondary school tuition.

"Subd. 4. The county board in the county which pays such tuition, at its July meeting shall determine the total sum to be paid on account of such tuition for the current school year in excess of the aid to be received from the state on account thereof, and shall levy a tax for such sum sufficient to pay such tuition, and the county auditor shall spread such tax on the property in the districts of the county which maintains no classified secondary school in the manner provided by law for spreading other taxes therein and such taxes shall be collected in the same manner as other taxes on property are collected. When collected such taxes shall be credited to the county school tax fund which is hereby created."

Appellants contend that the taxing authorities chose to construe § 124.51 as meaning the tax was to be spread on all property in districts without secondary schools without regard to the students in the districts or the nonresident tuition load created by the students, and that as so construed and applied, it is unconstitutional. They argue that the tax imposed by § 124.51, as the state construes it violates the uniformity clause of the State Constitution and the equal protection clause of the Federal Constitution.

Minn. Const. art. 9, § 1, provides that taxes shall be "uniform upon the same class of subjects." Appellants claim that in applying the uniformity clause this court has usually treated the problem as one of classification, citing Montgomery Ward & Co. Inc. v. Commr. of Taxation, 216 Minn. 307, 12 N. W. (2d) 625. In that case we said that the legislature has a wide discretion in classifying property for the purpose of taxation but that the classification must be based on differences which furnish a reasonable ground for making a distinction between the several classes. The differences must not be so

wanting in substance that the classification results in permitting one to escape a burden imposed on another under substantially similar circumstances and conditions.

In Louisville G. & E. Co. v. Coleman, 277 U. S. 32, 37, 48 S. Ct. 423, 425, 72 L. ed. 770, 774, the United States Supreme Court said:

"* * * [T]he classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' "

See, also, Montgomery Ward & Co. Inc. v. Commr. of Taxation, *supra*; National Tea Co. v. State, 205 Minn. 443, 286 N. W. 360.

The propriety of classification for the purpose of legislation is primarily for the legislature. Laws passed by the legislature are presumed to be valid, so we assume that the legislature makes inquiry and rightly determines the propriety of the classification which it adopts. This court will not disturb the legislative determination unless the classification is clearly arbitrary and has no reasonable basis. Williams v. Rolfe, 262 Minn. 284, 114 N. W. (2d) 671; Gunderson v. Williams, 175 Minn. 316, 221 N. W. 231. The uniformity clause of the Minnesota Constitution is not more restrictive than the equal protection clause of the Fourteenth Amendment of the Federal Constitution. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102.

Respondent contends that § 124.51 in its entirety and as construed and applied by the taxing authorities is not contrary to the State and Federal Constitutions and that the taxes levied and collected are not illegal. They point out that the legislature has a mandate from the constitution to provide a general and uniform system of public schools for Minnesota. This court had held that the provisions of Minn. Const. art. 8, §§ 1 and 3, are not grants of power, because the powers therein described would have existed without being granted, but rather are mandates prescribing the exercise of such powers as a specific duty. Associated Schools v. School Dist. No. 83, 122 Minn. 254, 142 N. W. 325, 47 L. R. A. (N.S.) 200.

Respondent claims that the burden of proving § 124.51 uncon-

stitutional rests upon appellants and that they must do so beyond a reasonable doubt. The decisions of this court have adopted and followed the rule that unless a law is unconstitutional beyond a reasonable doubt it must be sustained. State v. International Harvester Co. 241 Minn. 367, 63 N. W. (2d) 547. In construing the constitutionality of a legislative act, the intent of the legislature must be ascertained from the language of the entire act read in the light of the object evidently in view. Every presumption is in favor of the constitutionality of the act. It should not be declared unconstitutional unless it conflicts with some provision of the State or Federal Constitutions. If the act is reasonably susceptible of two different constructions, one of which would render it constitutional and the other unconstitutional, we must adopt the one making it constitutional. State v. Suess, 236 Minn. 174, 52 N. W. (2d) 409.

Respondent argues also that § 124.51 meets the test of "uniformity" and "classification." It is our opinion that it does. In Visina v. Freeman, 252 Minn. 177, 89 N. W. (2d) 635, an attack was made on the constitutionality of acts pertaining to the Port Authority of Duluth. One of the grounds was that the taxes imposed to maintain the port were in conflict with Minn. Const. art. 9, § 1, requiring that taxes be "uniform." An argument against its constitutionality was that the state was imposing a tax on portions of its people which derived no benefit from the improvement financed by the tax. We said (252 Minn. 195, 89 N. W. [2d] 650):

"Absolute equality of taxation is never attained. In all segments of the population there are those who must pay taxes for a purpose from which, it might be argued, they derive no direct benefit. But absolute equality has never been required. If there is a reasonable relationship to the apportionment of the taxes and the benefit to be derived by that segment of our population required to bear the financial burden, it lies within the province of the legislature to make such apportionment."

In the Head Money Cases, 112 U. S. 580, 595, 5 S. Ct. 247, 252, 28 L. ed. 798, 802, the United States Supreme Court long ago stated:

"\* \* \* Perfect uniformity and perfect equality of taxation, in all the aspects in which the human mind can view it, is a baseless dream \* \* \*."

Later, in Flint v. Stone Tracy Co. 220 U. S. 107, 31 S. Ct. 342, 55 L. ed. 389, that court stated that uniformity does not require the equal application of a tax to all who might come within its operation.

It is also the position of respondent that the legislature acted within its power in the method devised and in the tax imposed; that it did not unlawfully delegate its legislative power but only its legislative functions; that the law involved does not violate the Fifth Amendment of the United States Constitution; and that earmarking a tax for a particular purpose is not forbidden.

Respondent summarizes its argument with the contention that § 124.51 meets all the necessary constitutional requirements of uniformity and classification. Attorneys for both sides furnished us with comprehensive briefs presenting their respective views in connection with the question before us. To attempt to review all of the arguments and authorities set out in their briefs and referred to in oral arguments would unduly prolong this opinion. We have cited many authorities which we consider pertinent to this case.

The general plan for financing secondary schools and for making the county the taxing unit for raising money for its school purposes has been approved by this court in Associated Schools v. School Dist. No. 83, 122 Minn. 254, 142 N. W. 325, and in State v. Delaware Iron Co. 160 Minn. 382, 200 N. W. 475. It is our opinion that § 124.51 complies with constitutional requirements and that under these authorities it should be upheld.

It will be noted that while § 124.51 was first enacted by the legislature as part of the 1959 Education Code (Ex. Sess. L. 1959, c. 71, art. 5, § 39) it replaced a similar provision first enacted in 1947, L. 1947, c. 633, § 21. It also appears that the construction placed upon these statutes by the attorney general, the department of education, and the public examiner has been consistent since 1947. Although administrative construction placed upon a statute will not

in itself make it constitutional, it has been held that where a revenue act has been reenacted time and again, the regulations prescribed therefor have the force and effect of law. Old Mission Portland Cement Co. v. Helvering, 293 U. S. 289, 55 S. Ct. 158, 79 L. ed. 367; Hartley v. Commr. of Internal Revenue, 295 U. S. 216, 55 S. Ct. 756, 79 L. ed. 1399. It has also been held that reenactment of a statutory provision without change in the face of a consistent administrative construction is persuasive of a legislative recognition and approval of such construction. McCaughn v. Hershey Chocolate Co. 283 U. S. 488, 51 S. Ct. 510, 75 L. ed. 1183; Commr. of Internal Revenue v. Wheeler, 324 U. S. 542, 65 S. Ct. 799, 89 L. ed. 1166, rehearing denied, 325 U. S. 892, 65 S. Ct. 1182, 89 L. ed. 2004; Boehm v. Commr. of Internal Revenue, 326 U. S. 287, 66 S. Ct. 120, 90 L. ed. 78, rehearing denied, 326 U. S. 811, 66 S. Ct. 468, 90 L. ed. 495.

It may well appear to appellants that there is inequality in the treatment they received tax-wise in 1960-1961 under the somewhat isolated situation that exists in District No. 1923. It seems to us, however, that the condition is due to the fact that 152 of 154 pupils of high school age in the district attended privately maintained schools, rather than to any inequality existing in the law as construed and applied to all affected school districts throughout the state. If the 152 students had sought to attend public secondary schools, the School Board of District No. 1923 would have had to provide for their higher educations either locally or as they did in the case of the 2 students who did not attend the private school. In that event it is reasonable to assume that appellants' taxes would have been as high or higher than they were during the period of time involved here. It is our opinion that any tax adjustments or amendments in connection with the existing law is a legislative rather than a judicial matter.

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.