**RIO VISTA NON–PROFIT HOUSING CORPORATION, Respondent,**

v.

**COUNTY OF RAMSEY, Appellant.**

No. C4–82–720.

Supreme Court of Minnesota.

June 24, 1983.

Rehearing Denied Aug. 10, 1983.

---

Hubert H. Humphrey, III, Atty. Gen., and James W. Neher, Sp. Asst. Atty. Gen., Dept. of Revenue, Thomas Foley, County Atty., and Janet R. Stenborg, Asst. County Atty., St. Paul, for appellant.

Doherty, Rumble & Butler and Jerome Halloran, St. Paul, for respondent.

WAHL, Justice.

Rio Vista Non-Profit Housing Corporation (Rio Vista), which provides federally subsidized low-income housing, is before this court for a second time challenging Ramsey County's right to assess property taxes against it. On the first appeal, we held that Rio Vista was a purely public charity, exempt from property taxes under Minn.Stat. § 273.13, subd. 17 (1978) [1] on the basis of Minn.Stat. § 272.02, subd. 1(6) (1978) [2] and Minn. Const. art. 10, § 1.[3] *Rio Vista Non-Profit Housing Corp. v. Ramsey County,* 277 N.W.2d 187 (Minn.1979) (*Rio Vista I*). In so holding, however, we noted that the question was close and concluded that the state could not impose a tax against property which was not first subject to a general property tax:

> Institutions of purely public charity derive their exemptions from taxation under the provisions of Minn.St. 272.02. According to the language of that section, the tax-exempt status is limited only by the provisions set forth in §§ 272.02 and 272.025. *Had the legislature intended to limit or remove the tax-exempt status of the charitable Title II housing, it could have provided such in § 272.02 or § 272.025.* By placing the provision for a 20-percent tax on Title II housing in § 273.13, we hold that the tax-exempt status of Rio Vista is unaffected and that the 20-percent tax does not apply to tax-exempt institutions of purely public charity.

*Id.* at 192 (emphasis added).

The legislature, in apparent response to *Rio Vista I,* amended Minn.Stat. § 272.02 to

1. Minn.Stat. § 273.13, subd. 17 (1978) provides:
   A structure situated on real property that is used for housing for the elderly or for low and moderate income families as defined by Title II of the National Housing Act or the Minnesota housing finance agency law of 1971 or regulations promulgated by the agency pursuant thereto and financed by a direct federal loan or federally insured loan or a loan made by the Minnesota housing finance agency pursuant to the provisions of either of said acts and acts amendatory thereof shall, for 15 years from the date of the completion of the original construction or substantial rehabilitation, or for the original term of the loan, be assessed at 20 percent of the market value thereof, provided that the fair market value as determined by the assessor is based on the normal approach to value using normal unrestricted rents.
   Subd. 17a provides:
   The provision of subdivision 17 shall apply only to non-profit and limited dividend entities.

2. Minn.Stat. § 272.02, subd. 1(6) (1978) provides:
   Except as provided in other subdivisions of this section or in section 272.025, all property described in this section to the extent herein limited shall be exempt from taxation:
   \* \* \* \* \* \*
   (6) Institutions of purely public charity.

3. Minn. Const. art. 10, § 1 provides in relevant part:
   Section 1. *Power of taxation; exemptions; legislative powers* \* \* \* Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes, but \* \* \* institutions of purely public charity \* \* \* shall be exempt from taxation except as provided in this section \* \* \*. The legislature by law may define or limit the property exempt under this section other than churches, houses of worship, and property solely used for educational purposes by academies, colleges, universities and seminaries of learning.

exclude low-income, subsidized housing from tax exemption. Minn.Laws 1980, ch. 607, art. II § 6.

Subdivision 1. Except as provided in other subdivisions of this section or in section 272.025 or section 273.13, subdivisions 17, 17b, 17c or 17d, all property described in this section to the extent herein limited shall be exempt from taxation:

\* \* \* \* \* \*

(6) Institutions of purely public charity except property assessed pursuant to section 273.13, subdivisions 17, 17b, 17c or 17d;

\* \* \* \* \* \*

Minn.Stat. § 272.02, subd. 1(6) (1982).

Rio Vista is now suing Ramsey County for recovery of $14,065.36 in property taxes paid in 1981 and seeks a determination that Minn.Stat. § 272.02, subd. 1(6), as amended, violates 1) the equal protection clause of section 1, Amendment XIV of the United States Constitution and the uniformity clause of section 1, art. 10 of the Minnesota Constitution and 2) the supremacy clause of Clause 2, Art. VI of the United States Constitution. The trial court held the statute unconstitutional on these bases. We reverse.

1. Respondent first challenges section 272.02, subd. 1(6) on uniformity clause and equal protection[4] grounds. These challenges are treated as one for purposes of review, as they are equally restrictive of the legislature's power to tax and to classify. *Hegenes v. State,* 328 N.W.2d 719 (Minn. 1983); *In re McCannel,* 301 N.W.2d 910, 916, n. 4 (Minn.1980).

The legislature has broad discretion in selecting subjects for taxation and in granting tax exemptions. *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Where no fundamental right or suspect class is involved, the statute is presumed constitutional, and the burden is on the challenger

to prove constitutional violation beyond a reasonable doubt. *Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 142 (Minn.1980). *"This court will not disturb the legislative determination unless the classification is clearly arbitrary and has no reasonable basis." In re Taxes on Property of Cold Spring Granite Co.,* 271 Minn. 460, 466, 136 N.W.2d 782, 787 (1965), quoted in *Hegenes v. State,* 328 N.W.2d at 721 (emphasis supplied).

We have determined the constitutionality of statutory classifications by applying the three-pronged analysis of *Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn. 1979), set out most recently in *Hegenes v. State,* 328 N.W.2d at 721.

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

(Citations omitted.)

The distinction that separates subsidized low-income housing from other purely public charities is perceived by both parties to be the fact that subsidized housing receives all its support from public funds and tenants' rents, while other charities are supported in whole or in part by private donations. The legislature has no obligation to, and did not, state its purpose in providing reduced property tax rates for subsidized housing while completely exempting other charities. *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). Various purposes can

---

**4.** U.S. Const. amend. XIV, § 1 reads in part: No state shall \* \* \* deny to any person within its jurisdiction the equal protection of the laws.

be attributed to the legislature. The legislation will be sustained as having a rational basis if any conceivable state of facts supports it. *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937).

The federal government is contractually committed under the section 236 Federal Housing Program to provide a loan guarantee and mortgage interest subsidy, and, under the federal Rent Supplement Program, to supplement the rents of eligible low-income tenants. Respondent has not demonstrated receipt of any private support, nor has it demonstrated comparable public commitment to other similarly situated public charities. That burden is on the party challenging the statute. *Guilliams,* 299 N.W.2d at 140, n. 3, at 141.

Rio Vista's charitable purpose is to offer permanent, low-cost, subsidized housing to low- and moderate-income families for a specified rent payment and security deposit. The charities cited by the trial court as receiving governmental support as well as total exemption from state taxation offer services without regard to the financial circumstances of the recipients and are supported and maintained in part by private donations. *Mayo Foundation v. Commissioner of Revenue,* 306 Minn. 25, 236 N.W.2d 767 (1975); *Assembly Homes v. Yellow Medicine County,* 273 Minn. 197, 140 N.W.2d 336 (1966). The charitable foundation in *Worthington Dormitory, Inc. v. Commissioner of Revenue,* 292 N.W.2d 276 (Minn.1980), cited by Rio Vista as an example of a charitable institution receiving full tax exemption, was, as the state points out, supported almost totally by the private sector, even though cash contributions as such accounted for a relatively small part of that support. The legislative classification for tax purposes based on a distinction between government-supported charities with operations of a commercial nature and privately supported charitable institutions is not arbitrary and is reasonably grounded.

■ We next consider whether the classification is relevant to the purpose of the law, which the state declares is "to provide

limited tax relief to a distinct class of charitable institutions while providing full exemption to others." The state has the right to equalize the tax burden to offset tax-related advantages enjoyed by one group over another. *United States v. County of Fresno,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). A more even distribution of tax burdens on those permanent residents benefiting from local services at the same time they are enjoying substantial government subsidies is relevant to the revenue-raising purpose of any tax statute. This purpose is consistent with the definition of a tax classification as "a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden." *Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). The abated rate of tax is a recognition that the legislature wished to provide some measure of relief.

The last factor is that the purpose of the statute must be one which the state can legitimately attempt to achieve. Tax exemption to charities other than schools and churches is by legislative discretion. The legislature and not the courts defines property exemptions for nonprofit corporations. Furthermore, we noted in *Rio Vista I* that, had the legislature intended to limit or remove the tax-exempt status of charitable Title II housing, it could have provided such in section 272.02 or section 272.025. The legislature did just that. The purpose of the statute which tends to limit the public benefits flowing to any one group in a time of fiscal upheaval is legitimately achievable.

■ In sum, respondent has not proven beyond a reasonable doubt that Minn.Stat. § 272.02, subd. 1(6) is arbitrary and without any conceivable basis in fact. Although we cannot determine legislative purpose to a certainty, if it is evident that the classification is debatably rationally related to a statutory purpose, the party challenging the · statute cannot prevail. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 723, 66 L.Ed.2d 659 (1981). We hold that a tax classification of residential publicly subsidized housing projects to

equalize tax benefits does not violate either the equal protection clause of the federal constitution or the uniformity clause of the Minnesota constitution.

■ 2. The supremacy clause of U.S. Const. Art. VI, cl. 2 proscribes a state tax which is levied upon those who deal with the federal government and not others similarly situated. *Moses Lake Homes, Inc. v. Grant County,* 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66 (1961); *Phillips Chemical Co. v. Dumas Independent School District,* 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960). Respondent argues that, although Minn. Stat. § 273.13, subd. 17 levies a 20 percent tax on both federal- and state-subsidized housing, no state-subsidized housing exists, therefore only an entity dealing with the federal government is burdened.[5]

The response to this argument is three-fold. First, the statute by its express terms includes both state and federal housing and is thus nondiscriminatory. "The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility." *Guilliams,* 299 N.W.2d at 143, quoting *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979).

■ Secondly, the trial court, in looking beyond the express terms of the statute, placed the burden of proving the existence of state-subsidized housing on appellant. The challenger, not the state, has the burden of proof of constitutional violation beyond a reasonable doubt. *Federal Distillers, Inc. v. State,* 304 Minn. 28, 39, 229 N.W.2d 144, 154 (1975), *appeal dismissed,* 423 U.S. 908, 96 S.Ct. 209, 46 L.Ed.2d 137 (1975). Respondent has not proved beyond a reasonable doubt that the statute, which is nondiscriminatory by its very terms, is discriminatory in effect.

■ Finally, Congress anticipated that local property taxes would be levied on federal housing projects.[6] We conclude that respondent has not met its burden of proving a supremacy clause violation in Minn.Stat. § 272.02, subd. 1(6), which equally burdens federal- and state-supported housing.

Reversed with instructions to vacate the order for refund in accordance with this opinion.

---

5. The Minnesota Housing Finance Agency Law of 1971, codified at Minn.Stat. § 462A.01–.24 (1982), created the Minnesota housing finance agency to aid in the financing and construction of low-cost housing.

6. *See* 12 U.S.C.A. § 1715z–1a(e)(2) (1980), requiring developers to seek assurances from local officials that property taxes will be no greater than normal for the community, and 12 U.S.C.A. § 1715z–1(f)(3)(A) (repealed by Pub.L. 97–35, §§ 321(f)(3) and 322(f)(7)) and (g), providing for an operating subsidy fund to aid troubled developers faced with increased taxes and maintenance costs.