LITTLE EARTH OF UNITED TRIBES, INC., Relator,

v.

COUNTY OF HENNEPIN and State of Minnesota, Respondents.

No. C9–85–811.

Supreme Court of Minnesota.

March 28, 1986.

Jerome Halloran, Alan I. Silver, St. Paul, Larry Levanthal, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., James W. Neher, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Robert T. Rudy, Asst. Co. Atty., Minneapolis, for respondents.

SCOTT, Justice.

Little Earth of United Tribes, Inc., (Little Earth) petitioned the Minnesota Tax Court for recovery of 1983 and 1984 real estate taxes paid on a housing project it owns and operates in Minneapolis. The tax court ruled that the structures comprising the housing project were taxable, rejecting Little Earth's contention that Minn.Stat. §§ 272.02, subd. 1(6), and 273.13, subd. 17 (1984), which provide for a tax on the structures comprising nonprofit, government-subsidized housing projects at 20 percent of their market value, are unconstitutional. Little Earth seeks review of the tax court decision. We affirm.

The Little Earth housing project was constructed in 1973, to alleviate the severe shortage of decent housing for Native Americans living in the city of Minneapolis.[1] The project encompasses approximately two city blocks in Minneapolis and consists of 212 units located in 32 separate buildings. Approximately 900 people reside in the project, 95 percent of whom are Native Americans. The project is the only urban housing development in the United States that is owned by Native Americans.

The Little Earth project currently receives assistance under two federal housing programs. Under the "Section 8" program, 42 U.S.C. § 1437f (1982), Little Earth receives from the United States Department of Housing and Urban Development (HUD) an amount representing the difference between the "basic rent" for each of the units in the project and the highest of: (1) thirty percent of the resident's monthly income after allowance; (2) ten percent of the resident's monthly income; or (3) that portion of any welfare or general assistance designated for the resident's housing costs. The "basic rent" is computed by determining the cost of operating the unit with payments of principal and interest under a mortgage bearing interest at one percent.

Under the "Section 236" program, 12 U.S.C. § 1715z–1 (1982), Little Earth is only obligated to pay the holder of its mortgage each month an amount equal to the principal and interest that would be due if

1. According to testimony taken at trial, studies conducted by the University of Minnesota and Native American groups in 1968, 1969, and 1970 revealed that approximately 80 percent of the housing in which Native Americans were living was substandard.

a mortgage bearing only one percent interest had been executed. The difference between that monthly amount and the monthly amount actually due under the mortgage Little Earth executed is paid by HUD.[2]

Pursuant to Minn.Stat. § 278.01, subd. 1 (1984), Little Earth petitioned the Minnesota Tax Court to recover the real estate taxes it paid on the housing project for the years 1983 and 1984. The court disallowed Little Earth's claim that the project was exempt from taxation as "public property used exclusively for any public purpose" under Minn. Const. art. X, § 1, and Minn. Stat. § 272.02, subd. 1(7) (1984). Although the court found that the nonprofit corporation was an "institution of purely public charity" under Minn.Stat. § 272.02, subd. 1(6), it determined that the project itself should be taxed pursuant to Minn.Stat. § 273.13, subd. 17, which provides that low-income housing be assessed at 20 percent of its market value.[3]

Little Earth appealed to this court, and we now discuss (1) whether the Little Earth housing project is exempt from taxation as "public property used exclusively for any public purpose"; (2) whether Minn.Stat. §§ 272.02, subd. 1(6), and 273.13, subd. 17, violate the supremacy clause of the United States Constitution; and (3) whether the tax classification for nonprofit, government-subsidized housing projects violates the equal protection clause of the United States Constitution and the uniformity clause of the Minnesota Constitution.

1. Little Earth contends that the housing project it owns is "public property used exclusively for any public purpose" under Minn. Const. art. X, § 1, and Minn.Stat. § 272.02, subd. 1(7), notwithstanding that it is a *private*, nonprofit organization. The state and county argue that the public property exemption is limited to property used by the state or a political subdivision thereof.

■ To hold that the Little Earth project is public property under the exemption would violate our rule of strictly construing tax exemption provisions. *See Camping & Education Foundation v. State*, 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969). The public property exemption rests on the common-law principle that government, by virtue of its sovereign power, is immune from taxation. *See Foster v. City of Duluth*, 120 Minn. 484, 486, 140 N.W. 129, 130 (1913). This immunity precludes the illogic of the state taxing itself in order to raise money to pay over to itself. Extending the public property exemption to property owned by private, nonprofit organizations certainly would not mesh with this common-law underpinning of the public property exemption.

Moreover, such an extension would distort the specific classifications of exempt property enumerated in the constitution and the statute. A private organization such as Little Earth, which provides decent housing for persons unable to afford market-rate rents, is undoubtedly furthering a public objective and lessening the burdens of government. This fact, however, does not make the property Little Earth owns public. Many private, nonprofit groups provide services that benefit the public, and the state has recognized the contribution of these groups by exempting, either totally or partially, the property they own. *See* Minn.Stat. § 272.02, subd. 1(6) (exempting

---

2. The vast majority of residents in Little Earth appear to benefit from these two federal programs. On January 2, 1983, 191 families were paying less than the "basic rent" for their units, five families were paying a rent greater than the "basic rent" but less than the market-rate rent for their units, and one family was paying the market-rate rent for its unit.

3. The tax court also held that the land, as distinguished from the structures comprising the housing project, is not subject to taxation under Minn.Stat. § 273.13, subds. 17 and 17a (1984),

and that that portion of a structure that is leased to the Indian Health Board of Minneapolis is exempt under Minn.Stat. § 273.19, subd. 1 (1984). The court further determined that the assessor's 1982 and 1983 estimated market value for computing 1983 and 1984 real estate taxes was incorrectly calculated and accordingly it was reduced. The court concluded, however, that assessment levels of over 90 percent did not constitute "substantial" inequality. None of these rulings is being challenged in this appeal.

"[i]nstitutions of purely public charity"). Although the objectives of such charitable institutions may resemble those of public institutions, the distinction between the two is obvious: one is operated and controlled by private individuals, the other by government.

Distinguishing, for purposes of taxation, between property owned by government and property owned by private organizations is valid and must not be distorted. As we noted in *Foster*, 120 Minn. at 486, 140 N.W. at 130:

> The distinction is clear between property exempted from taxation by constitutional or statutory provisions, when such property would be subject to taxation in the absence of such provisions, * * * and public property used exclusively for public purposes, which would not be subject to taxation, though the Constitution had not so provided. In the one case the property exempted is private property, which for good reasons it is deemed wise or just to relieve from the burden of taxes that it would otherwise be obliged to sustain; in the other case the property is owned by the state, or by its agencies, is devoted to a public use, and is not subject to taxation * * *.

We therefore hold that the Little Earth housing project is not "public property used exclusively for any public purpose" under Minn. Const. art X, § 1, and Minn. Stat. § 272.02, subd. 1(7).

2. Little Earth argues that the statutory provisions providing for the taxation of nonprofit, government-subsidized housing violate the supremacy clause, article VI, clause 2, of the United States Constitution. A state tax is valid under the supremacy clause if it is not directly laid on the federal government and if it is not discriminatory. *United States v. County of Fresno*, 429 U.S. 452, 460, 97 S.Ct. 699, 703–704, 50 L.Ed.2d 683 (1977). In *Fresno*, the Court said:

> The rule to be derived from the Court's more recent decisions, then, is that the economic burden on a federal function of a state tax imposed on those who deal

with the Federal Government does not render the tax unconstitutional so long as the tax is imposed equally on the other similarly situated constituents of the State.

*Id.* at 462, 97 S.Ct. at 704–705 (footnote omitted). *See also Moses Lake Homes, Inc. v. Grant County*, 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66 (1961); *Phillips Chemical Co. v. Dumas Independent School District*, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960).

Section 272.02 of the Minnesota statutes exempts certain types of property from real estate taxation. Subdivision 1(6) of that section exempts "[i]nstitutions of purely public charity *except parcels of property containing structures and the structures assessed pursuant to section 273.13, subdivisions 17, 17b, 17c or 17d.*" (Emphasis added.) Subdivision 17 of section 273.13, provides, in part:

> **Title II or state housing finance agency property used for elderly and low and moderate income families.** (a) Except as provided in clause (b), a structure situated on real property that is used for housing for the elderly or for low and moderate income families as defined by Title II of the National Housing Act or the Minnesota housing finance agency law of 1971 or regulations promulgated by the agency pursuant thereto and financed by a direct federal loan or federally insured loan or a loan made by the Minnesota housing finance agency pursuant to the provisions of either of those acts and acts amendatory thereof shall, for 15 years from the date of the completion of the original construction or substantial rehabilitation, or for the original term of the loan, be assessed at 20 percent of the market value thereof, provided that the fair market value as determined by the assessor is based on the normal approach to value using normal unrestricted rents.

The structures comprising the Little Earth housing project were assessed at 20 per-

cent of their market value pursuant to this subdivision.[4]

In *Rio Vista Non-Profit Housing Corp. v. County of Ramsey*, 335 N.W.2d 242 (Minn.1983) *[Rio Vista II]*, appeal dismissed, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984), we discussed whether Minn.Stat. §§ 272.02, subd. 1(6), and 273.-13, subd. 17, violate the supremacy clause. We noted that the express language of section 273.13, subd. 17, provides for the taxation of both federal- and state-subsidized housing projects and thus is, by its express terms, nondiscriminatory. We also held that the owners of Rio Vista, a federally subsidized project, had not proven that the statutory provision, nondiscriminatory by its terms, was discriminatory in effect.

■ Little Earth contends that, unlike the evidence submitted at trial in *Rio Vista II*, the testimony presented at trial in this case establishes that the statutory provision, in effect, taxes only federally subsidized housing and not state-subsidized projects. Little Earth relies on the testimony of James Solem, executive director of the Minnesota Housing Finance Agency. At trial, Solem testified that the state currently has no rent-subsidy or rent-supplement program similar to the federal Section 8 and Section 236 programs. "Thus," Little Earth states, "the only institutions of purely public charity that are taxed are those that receive a federal subsidy."

This conclusion, however, does not follow from the evidence adduced at trial. Solem testified that the Minnesota Housing Finance Agency provides, to organizations constructing low-income and elderly housing, permanent mortgage financing through the sale of tax-exempt revenue bonds. At trial, Little Earth introduced a list of the only nonprofit organizations that have ever received financing from the state housing agency. Three of the five projects listed currently receive funds under the federal Section 8 or Section 236 programs and, like Little Earth, are taxed pursuant to the statute. The other two projects on the list received construction financing through the Minnesota Housing Finance Agency, but receive no federal funds under Sections 8 or 236. No evidence introduced at trial established that these two housing projects, which received less-than-market-rate construction financing from the state housing agency, could not be taxed or were not being taxed pursuant to Minn.Stat. § 273.13, subd. 17. The plain meaning of the provision would appear to require that such state-financed projects be assessed at 20 percent of their market value, just as federally subsidized housing projects are.

Little Earth argues that even if the projects financed by the Minnesota Housing Finance Agency are subject to taxation under the provision, the statute is nonetheless unconstitutional because the supremacy clause precludes a tax on organizations doing business with the federal government unless all "similarly situated" organizations are taxed. Little Earth notes that the state-financed projects are not "similarly situated" to federally subsidized projects, such as Little Earth.

■ It was established at trial that the state currently has no rent-subsidy program similar to the federal Section 8 or

---

4. In 1985 the legislature reclassified property for purposes of real estate taxation. Minn.Stat. § 273.13, subd. 17, was repealed and replaced with Minn.Stat. § 273.13, subd. 28 (Supp.1985), which is effective for taxes levied in 1986 and payable in 1987 and thereafter. *See* Act of June 28, 1985, ch. 14, art. 4, §§ 53, 98 & 99, 1985 Minn. Laws 2302, 2428–30, 2459–60. The new statutory provision reads, in part:

Class 7a is a structure that is situated on real property that is used for housing for the elderly or for low and moderate income families as defined by Title II of the National Housing Act or the Minnesota housing finance agency law of 1971 or regulations promulgated by the agency pursuant thereto and financed by a direct federal loan or federally insured loan or a loan made by the Minnesota housing finance agency pursuant to the provisions of either of those acts and acts amendatory thereof. Class 7a property must, for 15 years from the date of the completion of the original construction or substantial rehabilitation, or for the original term of the loan, be assessed at 20 percent of the market value.

Minn.Stat. § 273.13, subd. 28(a) (Supp.1985).

Section 236 programs. This, however, does not convert the statute, which is by its express terms nondiscriminatory, into one that is, in effect, discriminatory. If and when a state rent-subsidy program is enacted, housing projects receiving such funds will be subject to the 20-percent assessment under the provision. Certainly, in order to tax private, nonprofit organizations that own or operate housing projects receiving Section 8 and Section 236 funds, a state is not forced to enact a rental subsidy program identical to the federal government's. The state has established the Minnesota Housing Finance Agency, which seeks to achieve a goal similar to that of the federal rent-subsidy programs: the availability of decent housing for low-income and elderly individuals. *See* Minn. Stat. §§ 462A.01–.24 (1984). Housing projects receiving such state financing are subject to taxation just as projects receiving federal funds are. Thus, the tax is not an abusive one that assesses only projects receiving federal funds.[5]

Little Earth was charged with the duty of establishing that the tax provision, in effect, discriminates between federally subsidized housing projects and state-financed housing developments, in violation of the supremacy clause. *See Federal Distillers, Inc. v. State*, 304 Minn. 28, 39, 229 N.W.2d 144, 154, *appeal dismissed*, 423 U.S. 908, 96 S.Ct. 209, 46 L.Ed.2d 137 (1975). This burden was not met and we affirm the tax court on this issue.

■ 3. Little Earth contends that the statutory tax classification for nonprofit, government-subsidized housing projects violates the equal protection clause of the United States Constitution and the uniformity clause of the Minnesota Constitution. We have treated challenges under these two clauses as one for purposes of appellate review, for they are equally restrictive of the legislature's power to tax and to classify. *See Rio Vista II*, 335 N.W.2d at 245; *Hegenes v. State*, 328 N.W.2d 719, 720–21 (Minn.1983); *In re McCannel*, 301 N.W.2d 910, 916 n. 4 (Minn. 1980).

■ These two constitutional provisions require that persons similarly situated be treated alike unless a rational basis exists for distinguishing among them. *See, e.g., Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *In re Cold Spring Granite Co.*, 271 Minn. 460, 466, 136 N.W.2d 782, 787 (1965). Here, no suspect classification or fundamental right is present; thus, the rational basis test is applicable. Under this test, a statutory classification will be upheld if it is reasonably related to a legitimate state purpose. For tax purposes, the legislature is afforded considerable discretion in determining classifications. As we stated in *Cold Spring Granite Co., id.* at 466, 136 N.W.2d at 787: "This court will not disturb the legislative determination unless the classification is clearly arbitrary and has no reasonable basis."

■ Legitimate purposes exist for the tax classification challenged in this case. Although providing decent housing for the poor and elderly is undoubtedly a charitable goal, there is nonetheless a commercial nature to such an operation. Residents of the Little Earth project are required to pay a specified rent and security deposit, not unlike rental arrangements in the private sector. There is no doubt that Congress anticipated that local property taxes would be levied on housing projects receiving federal funds. *See, e.g,* H.R.Rep. No. 1585, 90th Cong., 2d Sess., *reprinted in,* U.S. Code Cong. & Ad. News 2873, 2897–98 (1968); 12 U.S.C. § 1715z–1a(e)(2) (1982). Thus, the legislature, recognizing the com-

---

**5.** Little Earth contends that the recent holding by the New York Court of Appeals in *Forbes v. Department of Finance of New York*, 66 N.Y.2d 243, 496 N.Y.S.2d 394, 487 N.E.2d 251 (1985), supports its position that under the Minnesota provisions all institutions of purely public charity that do not receive a federal rent subsidy are treated "more leniently" than institutions of purely public charity that receive such a subsidy. We fail to see the applicability of the *Forbes* decision to the case at bar, and reject Little Earth's contention that housing projects receiving Section 8 and Section 236 funds are taxed differently than projects receiving state funds.

mercial aspect of operating a nonprofit, government-subsidized housing project, could have taxed, based on a full-market-value assessment, all residential rental buildings, whether for-profit or nonprofit, privately sponsored or government-subsidized. The legislature could also have determined that the public policy of the state should support decent housing for those unable to pay market-rate rents and accordingly provide that no tax is to be levied on housing projects like Little Earth. In what appears to be a compromise between these two alternatives, the legislature has allowed a tax based on an assessment of only 20 percent of the fair market value of housing projects such as Little Earth, affording such projects an advantageous tax rate compared to other private apartment complexes, but also recognizing the commercial nature of the operation of such projects and the governmental services they use. An assessment of 20 percent is reasonable in light of the recognition that such commercial projects rely on local public services in order to remain in operation.

In past decisions we have noted that the propriety of classification is primarily a matter for the legislature and that we will assume that the legislature investigates and properly determines the propriety of the classification it adopts. *See In re McCannel*, 301 N.W.2d at 917; *Elwell v. County of Hennepin*, 301 Minn. 63, 74, 221 N.W.2d 538, 546 (1974); *Cold Spring Granite Co.*, 271 Minn. at 466, 136 N.W.2d at 787. The classification challenged by Little Earth is reasonably related to a legitimate state purpose; therefore, we affirm the decision of the tax court on this issue also.

Affirmed.