FEDERAL DISTILLERS, INC. AND OTHERS
v. STATE AND ANOTHER.
OLD PEORIA COMPANY, INC., AND
OTHERS v. JOSEPH NOVAK.*

229 N. W. 2d 144.

May 2, 1975—Nos. 44831, 44837, 44844, 44832, 44833, 44834.

---

* Appeals dismissed sub nom. Griggs, Cooper & Co. Inc. v. Novak and Heaven Hill Distilleries, Inc. v. Novak, 423 U. S. 908, 96 S. Ct. 209, 210, 46 L. ed. 2d 137 (1975).

*Maun, Hazel, Green, Hayes, Simon & Aretz, Lawrence J. Hayes, William J. Hassing, James A. Gallagher,* and *Richard M. Gaalswyk,* for appellant Griggs Cooper.

*Shanedling, Phillips, Gross & Aaron* and *Felix M. Phillips,* for appellants Federal Distillers, Mr. Boston Distiller, and Johnson Brothers.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty, Hyman Edelman, Irving R. Brand,* and *Joann N. Lynch,* for other appellants.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solici-

tor General, and *Kenneth E. Raschke, Jr.*, and *Thomas H. Jensen*, Special Assistant Attorneys General, for respondents.

ROGOSHESKE, JUSTICE.

These appeals challenge the constitutionality of L. 1973, c. 664, § 2, now coded as Minn. St. 340.114, an amendment to Minnesota's Intoxicating Liquor Act requiring all licensed importers (distillers) of liquor to offer their products for sale to all Minnesota liquor wholesalers on an equal basis.[1] The court below found

---

[1] Minn. St. 340.114 (L. 1973, c. 664, § 2) provides: "Subdivision 1. All licensed importers shall offer for sale on an equal basis to all licensed wholesalers and manufacturers all intoxicating liquor brought into the state of Minnesota.

"Subd. 2. Without limiting subdivision 1, the following shall be deemed failures to offer intoxicating liquor for sale on an equal basis and are unlawful:

(a) A refusal to sell any intoxicating liquor to a wholesaler or manufacturer, which is offered for sale to any other wholesaler or manufacturer, except when a wholesaler or manufacturer is in arrears on payments for past purchases from the importer who refuses to sell.

(b) A sale of any intoxicating liquor to any wholesaler or manufacturer at a price different from that offered to any other wholesaler or manufacturer, exclusive of shipping costs, except that quantity discounts based upon actual cost savings may be uniformly offered to all wholesalers and manufacturers.

(c) A sale of any intoxicating liquor to any wholesaler or manufacturer on terms of purchase different from those offered any other wholesaler or manufacturer, except that when the importer reasonably believes that a wholesaler or manufacturer will be unable to comply with the existing terms of credit, then other terms may be employed, including denial of credit.

(d) Any discrimination among wholesalers and manufacturers in satisfying their respective demands for any intoxicating liquor.

(e) A sale conditioned upon an agreement which restricts the wholesaler or manufacturer with respect to customers, area for distribution, or resale price, or which otherwise restrains the wholesaler or manufacturer from competing in trade and commerce.

(f) For purposes of this subdivision and subdivision 1 only, the

the statute constitutional in all respects. As we find c. 664 to be a valid exercise of the state's police power to promote the public's economic welfare, and that plaintiffs, licensed distillers and wholesalers of liquor, have failed to establish that any provisions of the act on their face transgress constitutionally protected property rights, we affirm.

These cases seeking declaratory judgment and injunctive relief were commenced in June and July of 1973 by the various plaintiffs, all of whom are involved in the distribution of liquor in Minnesota. By order of the Ramsey County District Court the cases were consolidated for trial, and enforcement of the statute

---

term 'intoxicating liquor' shall not include 'pop wines' as the same are defined by regulation of the commissioner.

"Subd. 3. No licensed importer or manufacturer shall offer or sell to any licensed wholesaler any intoxicating liquor at a bottle or case price which is higher than the lowest price at which such item of liquor is contemporaneously being sold by such importer or manufacturer to any wholesaler anywhere in any other state of the United States or in the District of Columbia or to any state or state agency which owns and operates retail liquor stores.

"In determining the lowest price for which any item of liquor is being sold in any other state or in the District of Columbia, or to any state or state agency which owns and operates retail liquor stores, appropriate reductions shall be made to reflect all discounts, rebates, free goods, allowances and other inducements of any kind whatsoever offered or given to any such wholesaler, state, or state agency purchasing such item in such other state or in the District of Columbia; provided that nothing contained herein shall prevent differentials in price which make only due allowance for differences in state taxes and fees, and in the actual cost of delivery. As used in this subdivision, the term 'state taxes or fees' shall mean the excise taxes imposed or the fees required by any state or the District of Columbia based upon a gallon of liquor.

"Subd. 4. Nothing in this section shall apply to any wines or malt beverages regardless of alcoholic content."

The portions of the statute particularly challenged here are subds. 1, 2(a), and 4.

Minn. St. 340.19 provides criminal penalties for violation of the Intoxicating Liquor Act.

was temporarily restrained. The matter was tried to the court without a jury in September 1973. The trial court held that the statute is neither an improper exercise of police power, overbroad in operation, nor in violation of the constitutional guarantees of due process and equal protection. Plaintiffs moved the court for amended findings of fact and conclusions of law or for a new trial. The trial judge denied the motions, and plaintiffs appeal from those denials. Upon plaintiffs' motion, this court continued the restraint on enforcement of the statute pending decision on appeal.

Plaintiffs fall generally into two categories: (1) "Distillers," or corporations licensed as importers under § 340.113[2] which manufacture, rectify, blend, bottle, and label liquor which is sold to wholesale distributors in Minnesota; and (2) "wholesalers," or Minnesota corporations licensed under § 340.11, subd. 2,[3] to sell liquor at wholesale in Minnesota. The distillers include:

■ Federal Distillers, Inc., a Massachusetts corporation, which sells its brands of distilled spirits only to Johnson Brothers

---

[2] There are at present approximately 150 holders of licenses under § 340.113, which provides in part: "Subdivision 1. No intoxicating liquor or ethyl alcohol shall be shipped into this state by any distiller, rectifier, winer, or wholesale distributor, or any other person, to any licensed Minnesota manufacturer or wholesale dealer unless and until such distiller, rectifier, winer, wholesale distributor, or such other person has secured a license from the liquor control commissioner permitting him so to do."

[3] There are at present 11 holders of wholesaler's licenses under § 340.-11, which provides in pertinent part: "Subdivision 1. It shall be unlawful for any person, directly or indirectly, upon any pretense or by any device, to manufacture, import, sell, exchange, barter, dispose of, or keep for sale any intoxicating liquor without first having obtained a license therefor. * * *

"Subd. 2. Manufacturers' and wholesalers' licenses shall be issued by the liquor control commissioner.

"A manufacturer's or wholesaler's license shall include the right to import. The business of manufacturer and wholesaler may be combined and carried on under one license issued therefor."

Wholesale Liquor Company (Johnson). Some of its manufactured products are bottled and labeled under brands owned by Federal and some are labeled under brands owned by Johnson.

2. Mr. Boston Distiller Corporation, a Massachusetts corporation, which bottles distilled spirits under brands owned by Johnson and under brands owned by Mr. Boston. Mr. Boston sells such brands only to Johnson in Minnesota.

3. National Distillers & Chemical Corporation, a Virginia corporation, which sells its branded liquor and wines only to Ed Phillips & Sons in Minnesota.

4. Heaven Hill Distillers, Inc., a Kentucky corporation, which sells its liquors to Old Peoria Company, Inc., under brands owned by Heaven Hill.

The second group of plaintiffs, the wholesalers which sell to licensed retailers, includes:

1. Johnson Brothers Wholesale Liquor Company, which deals in liquor and wine and owns registered private-brand labels under which liquor is distilled for it by Federal and Mr. Boston.

2. Old Peoria Company, Inc., which sells both liquor and wine.

3. Griggs, Cooper and Company, Inc., which distributes and sells both wine and liquor.

4. Ed Phillips & Sons Company (Phillips), a Minnesota corporation licensed under § 340.113 and carrying on importation, manufacturing, and wholesaling operations under that license. Phillips imports bulk whiskey, which it then rectifies, blends, bottles, and labels with its own registered brand labels. Phillips sells these branded products to retailers in Minnesota and to wholesalers in other states. Phillips also purchases liquor from National and other distillers outside of Minnesota and sells that liquor to Minnesota retailers as the sole wholesale outlet.

Named defendants include the State of Minnesota and Joseph Novak, the liquor control commissioner. Raymond Distributing Company, Inc., which intervened as a defendant, is a Minnesota wholesaler, licensed in May 1973. Raymond has unsuccessfully

attempted to purchase certain established brands of intoxicating liquors from some out-of-state distillers and, although it could apparently purchase some unknown or lesser-established brands of intoxicating liquor, it has not commenced business.

Chapter 664, essentially designed to abolish exclusive wholesale distribution of liquor and thereby to promote price competition by seeking to eliminate actual or potential monopolistic practices and price fixing by distillers and wholesalers, adds another page to the long history of legislative regulation of liquor in Minnesota. The most recent thorough revision of the liquor laws occurred in 1967 with the passage of the Intoxicating Liquor Act.[4] That act, together with the earlier regulatory and licensing statutes, has in large measure dictated the pattern of the present system of liquor distribution to Minnesota consumers. In general, that system is three-tiered, consisting of the distiller (also referred to as a manufacturer in our statutes), the wholesaler, and the retailer, each of whom carries on his activities under licenses and various prohibitions of the statutory scheme established by Minn. St. c. 340 and regulations promulgated by the liquor control commissioner. Beginning in 1951, the major effort by the legislature to impose economic regulations to affect the price of liquor was the so-called "fair trade" law.[5] Its design and purpose was declared to be to promote temperance and eliminate "price wars," which the legislature determined unduly stimulated the sale and consumption of alcoholic beverages. Under this law, wholesalers or brand owners were required to file minimum consumer retail prices for each brand sold to retailers, and the latter were prohibited from selling to consumers for less than the filed price. In 1969, and again in 1971, enforcement of this law was suspended, presumably because of a legislative determination that the price of liquor neither significantly deterred consumption nor promoted temperance. A Liquor Study Commis-

---

[4] L. 1967, c. 19 (Minn. St. 340.07 to 340.353, 340.355 to 340.407, 340.493, and 340.51). See Historical Note preceding c. 340 at 22 M. S. A. p. 9.

[5] Minn. St. 1971, §§ 340.97 to 340.978.

sion, created in 1971, confirmed in part that determination by finding that the 1969 moratorium of the fair trade law increased competition and resulted in lower prices to the consumer. In its report to the legislature in 1973, the commission declared:

"In actual practice the statute had altogether different results. By attempting to keep liquor prices artificially high, the statute appeared to protect the interests of existing retail licensees and keep vigorous competition to a minimum. It also gave the distilling and wholesaling levels of the liquor industry near-total authority to administer prices, backed up by the power of the state. It created, in effect, virtually all the characteristics of a monopoly operated for private benefit." [6]

The commission also found that the 1969 and 1971 moratoriums did not eliminate the statutory-induced practice by wholesalers and brand owners of circulating lists of suggested retail prices, and that "[t]his form of 'voluntary fair trade' * * * can be used to perpetuate the price maintenance tradition and provide a shelter from competition." [7]

Prior to 1969, the statutory scheme did not prevent a distiller or manufacturer from choosing to market his product within the state exclusively through a single wholesaler. This practice of exclusive wholesale dealerships had become entrenched during the years prior to 1969, with the result that the retailer, be he a private businessman or a municipality, [8] in order to sell a particular brand of liquor, was compelled to deal with a particular wholesaler and to pay that wholesaler's price. As the Liquor Study Commission observed, the existence of a relatively few wholesalers, with an apparent market concentration in four of the wholesalers, and the exclusive-brand distribution system provoked the most frequent allegation of monopolistic practices and

---

[6] Liquor Study Commission, Final Report 1973, p. 5.

[7] Id. at p. 7.

[8] Municipally-owned liquor stores are authorized in Minnesota. § 340.-353.

price fixing against the liquor industry.[9] The trial court found upon ample evidence, as the Liquor Study Commission report indicated, that while there is vigorous competition between distillers and wholesalers in sales to retailers and consumers of particular brands of liquor—that is, *interbrand* competition—, there is no *intrabrand* competition, since each brand of liquor is available from only one wholesaler. In 1969, the legislature attempted to promote intrabrand competition by enacting a statute which prohibited contractual agreements establishing exclusive wholesale distributorships.[10] That statute was ineffective since both distillers and wholesalers found it to their advantage to continue the practice of sole distributorships by the distillers, declaring that they had no agreement to do so but simply chose in their discretion to limit sales to a wholesaler of demonstrated loyalty, efficiency, and selling ability.

It was with this background that the 1973 Legislature enacted c. 664. That enactment was accompanied by the repeal of both the fair trade law and § 340.984, prohibiting sole distributorships.[11] The implicit design of c. 664 is to abolish sole distributorships and thereby promote intrabrand price competition by requiring all licensed distillers importing distilled spirits into

[9] Liquor Study Commission, Final Report 1973, p. 14.

[10] Minn. St. 1971, § 340.984 (L. 1969, c. 1119, § 5, repealed by L. 1973, c. 664, § 10), provided: "It shall be unlawful for any wholesaler to enter into an agreement with a manufacturer by the terms of which the manufacturer is prohibited from supplying intoxicating liquor to any other wholesaler within the state. Any such agreement, whether entered into before or after June 7, 1969, is hereby declared to be contrary to public policy and void. In addition, the entering into of any agreement prohibited by Laws 1969, Chapter 1119 after the effective date of enactment shall constitute grounds for revocation of a wholesaler's license."

[11] Also repealed were residency requirements for wholesalers, Minn. St. 1971, § 340.11, subd. 2, an adoption of the recommendation of the Liquor Study Commission that such was desirable to ensure competition at the wholesale level by removing a barrier to entry into the wholesale level of the market.

Minnesota to offer to sell their manufactured product or brands of liquor to all licensed Minnesota wholesalers on an equal basis and at an affirmation price, that is, to sell at the lowest price at which a distiller sells its liquor at wholesale in the United States. The ultimate legislative objective is to ensure that wholesalers can buy at the lowest national price and, by making all distillers' brands available to them, to encourage them by competition to lower prices to retailers. Included in this legislative objective is the hope that retailers, now able to compete with one another for the sale of all brands, will lower prices to Minnesota consumers. Its effect on this state's licensed components of the liquor industry is to prohibit discrimination by distillers in favor of one licensed wholesaler against another; to transfer control over the distribution and sale of the various brands of liquor from the distillers to the wholesalers; and to promote a wider distribution of liquor brands throughout the state by affording retailers the opportunity to purchase a variety of brands from competing wholesalers. This legislation obviously is not designed to promote temperance, since, if lower consumer prices result, the opposite may occur even though, speculatively, the necessity of distillers or wholesalers to aggressively merchandise various brands by intensive advertising may be diminished and thereby stimulation of consumer buying habits lessened.

Plaintiffs broadly challenge c. 664 on every conceivable constitutional ground. In considering this attack, we must bear in mind the following fundamental principles:

1. The legislature possesses all legislative power not withheld or forbidden by the State or Federal Constitutions. George Benz Sons, Inc. v. Ericson, 227 Minn. 1, 34 N. W. 2d 725 (1948). Courts do not pass upon the soundness of social or economic theories in the legislative mind when statutes are enacted in exercise of the police power, nor can courts substitute their judgment for that of the legislature as to the wisdom, expediency, or effectiveness of this type of regulation. Fairview Hospital Assn. v. Public Bldg. Service Union, 241 Minn. 523, 64 N. W. 2d

16 (1954); Lee v. Delmont, 228 Minn. 101, 36 N. W. 2d 530 (1949). To warrant the judiciary's declaring an act invalid, it must be able to point out some constitutional limitation which the act clearly transcends. State v. Corbett, 57 Minn. 345, 59 N. W. 317 (1894).

2. This act, like every legislative enactment, comes to the courts with a presumption in favor of its constitutionality. Klicker v. State, 293 Minn. 149, 197 N. W. 2d 434 (1972); Head v. Special School Dist. No. 1, 288 Minn. 496, 182 N. W. 2d 887 (1970), certiorari denied sub nom. Minneapolis Federation of Teachers, Local No. 59, v. Spannaus, 404 U. S. 886, 92 S. Ct. 196, 30 L. ed. 2d 168 (1971); 17B Dunnell, Dig. (3 ed.) § 8929. The burden of proof is on the challenging parties to show beyond a reasonable doubt that the act violates some particular constitutional provision. Minneapolis Federation of Teachers v. Obermeyer, 275 Minn. 347, 147 N. W. 2d 358 (1966).

3. Since all enforcement of the act has been restrained both during trial and pending this appeal, we deal only with whether the challenged provisions are unconstitutional on their face. When an act is challenged on its face, the reviewing court is permitted to consider neither hypothetical applications of the act which might be unconstitutional nor possible constructions of the act which might render it unconstitutional. If a legislative act is reasonably susceptible of two different constructions, one of which will render it constitutional and the other unconstitutional, the former must be adopted. Hassler v. Engberg, 233 Minn. 487, 48 N. W. 2d 343 (1951); State v. Rawland, 294 Minn. 17, 199 N. W. 2d 774 (1972).

4. Finally, and of vital significance, is the Twenty-First Amendment to the Federal Constitution, § 2 of which provides:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

It has been held repeatedly that this amendment has bestowed upon the states broad regulatory powers over liquor importation, recognized as something more than the normal state authority over health, welfare, and morals. State Board of Equalization v. Young's Market Co. 299 U. S. 59, 57 S. Ct. 77, 81 L. ed. 38 (1936); Joseph E. Seagram & Sons, Inc. v. Hostetter, 16 N. Y. 2d 47, 262 N. Y. S. 2d 75, 209 N. E. 2d 701 (1965), affirmed, 384 U. S. 35, 86 S. Ct. 1254, 16 L. ed. 2d 336 (1966); Mahoney v. Joseph Triner Corp. 304 U. S. 401, 58 S. Ct. 952, 82 L. ed. 1424 (1938); United States v. Frankfort Distilleries, Inc. 324 U. S. 293, 65 S. Ct. 661, 89 L. ed. 951 (1945); California v. La Rue, 409 U. S. 109, 93 S. Ct. 390, 34 L. ed. 2d 342 (1972). Thus we have held that no one has the absolute right to engage in selling intoxicating liquors. It is a privilege granted by the licensing authority and subject to the state's police power. George Benz Sons, Inc. v. Ericson, *supra;* Giozza v. Tiernan, 148 U. S. 657, 13 S. Ct. 721, 37 L. ed. 599 (1893). When once licensed, no one can acquire a vested right to continue in a business which is subject to regulation under the police power. Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. 2d 603 (1948); 45 Am. Jur. 2d, Intoxicating Liquors, §§ 115, 116. The Twenty-First Amendment does not, however, empower the states to invade equal-protection and due-process constitutional rights guaranteed by the Fourteenth Amendment. Wisconsin v. Constantineau, 400 U. S. 433, 91 S. Ct. 507, 27 L. ed. 2d 515 (1971); California v. La Rue, *supra;* George Benz Sons, Inc. v. Ericson, *supra;* Sail'er Inn, Inc. v. Kirby, 5 Cal. 3d 1, 95 Cal. Rptr. 329, 485 P. 2d 529 (1971). We are mindful that the Twenty-First Amendment does not limit the scope of equal-protection and due-process guarantees of the Minnesota Constitution.[12] However, we apply Fourteenth Amendment standards since we are aware of no compelling reason peculiar to this state which would justify more stringent state standards.

In the light of these fundamentals, we believe that a number

---

[12] Minn. Const. art. 1, §§ 2, 7; art. 12, § 1.

of plaintiffs' arguments may be disposed of without lengthy discussion. Plaintiffs argue that there is no guarantee that the benefits of intrabrand competition at the wholesale level will be passed on to consumers; that desirable brands may disappear from Minnesota; that some wholesalers may be unable to compete effectively; that wholesalers' salesmen will lose their employment; and that some brands of liquor will receive no promotion. All these arguments involve the sort of informed prediction and considered decision making that is peculiarly for the legislature rather than the courts. The argument of plaintiff Johnson that two of its distiller suppliers, Federal and Mr. Boston, are required by the act to sell liquor bottled under brands owned by Johnson to all wholesalers is speculative and hypothetical. There is no indication that the liquor commissioner is about to construe the statute in such a way as to invade Johnson's right of ownership in its registered private-brand labels, and the statute on its face clearly does not require such a construction. Plaintiffs also claim constitutionally-protected vested property rights in wholesalers based upon their having acquired wholesalers' licenses and having spent money on advertising, salesmen, and the promotion of particular brands of liquor. We hold that no such vested rights in the continuance of the existing distribution system exist and, in addition, observe that it is neither the purpose nor likely effect of this statute to drive any wholesaler out of business.[13]

Plaintiffs also allege an equal-protection discrimination between out-of-state importers and Phillips, which imports bulk liquor into Minnesota, performs rectifying, blending, and bot-

---

[13] Plaintiffs challenge the trial court's finding of fact, primarily for the reason that the findings fail to recognize the investment of the plaintiffs in building up their business under the existing system of distribution. We have reviewed the findings and the record and find them to be neither incomplete nor clearly erroneous. Rule 52.01, Rules of Civil Procedure; In re Estate of Balafas, 293 Minn. 94, 198 N. W. 2d 260 (1972).

tling operations in Minnesota, and sells the bottled liquor under its own brand labels to wholesalers in other states and to Minnesota retailers as the sole wholesale distributor. They insist that the statute cannot be construed to include Phillips in view of the fact that Phillips does not hold a license under § 340.113 and, under the commission's regulations existing at the time of trial, an "importer" was defined as "any out-of-state distiller."[14] In so arguing, plaintiffs are urging a construction of the statute which would call its constitutionality into question. They insist that Phillips be excluded from the statutory classification "licensed importer" and at the same time insist that such a construction would constitute a violation of equal protection. We find this argument without merit under the fundamental principle of presumed constitutionality previously discussed. See, also, In re Taxes on Property of Cold Spring Granite Co. 271 Minn. 460, 136 N. W. 2d 782 (1965). The trial court's construction of the statute to include Phillips as a "licensed importer" is reasonable. While Phillips does not hold a license under § 340.113, it does hold a license under § 340.11, which explicitly includes the right to import.[15] The trial court found as fact upon undisputed evidence that Phillips does bring liquor into the state and, on that basis and in answer to Phillips' request for declaratory judgment, found that Phillips is included within the statutory classification. Moreover, there is no indication that the commissioner is inclined to adopt regulations which would render unconstitutional the enforcement of the act. The regulations relied upon were in force before the enactment of c. 664, which when enforced will require the issuance of new regulations.[16]

---

[14] State of Minnesota, Dept. of Administration, Regs. Relating to the Administration of the Office of Liquor Control Commissioner, 1970 ed., Definitions, p. 12. See, also, Regs. Liq. 68 and Liq. 70, p. 47.

[15] See footnote 3, *supra.*

[16] It should be noted that the preface to definitions in the 1974 edition of the liquor control regulations reads as follows: "The adoption, repeal or amendment of any regulation herein shall not be deemed applicable

Mindful of the rule that a statute must be construed to save its constitutionality, we hold the trial court's construction to be correct and consistent with the intent of the legislature and the plain language of the act. Therefore plaintiffs' equal-protection challenge cannot be sustained.

Plaintiffs also urge that the act's exclusion from coverage of wines and malt beverages constitutes an invidious discrimination, rendering the act invalid under equal-protection guarantees. While we recognize that wine, beer, and liquor are similarly distributed and sold, and that liquor may in a broad sense compete with the other two beverages for the consumer dollar, we agree, as the trial court found, that the differences inherent in the products themselves justify the legislative decision to include only distilled spirits within this act. More important is the principle that a law is not to be overthrown because there are other instances to which it might have been applied, and the fact that a statute discriminates does not make the classification invidious if it is founded upon a rational distinction. State v. Pehrson, 205 Minn. 573, 287 N. W. 313 (1939); George Benz Sons, Inc. v. Ericson, *supra*. The Fourteenth Amendment does not compel a legislature to prohibit all the evils or none, and a legislature may hit at an abuse which it has found even though it fails to strike at another. United States v. Carolene Products Co. 304 U. S. 144, 58 S. Ct. 778, 82 L. ed. 1234 (1938). Furthermore, legislative economic reform may take one step at a time, addressing itself to that phase of the problem which seems most acute to the legislative mind. Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U. S. 35, 86 S. Ct. 1254, 16 L. ed. 2d 336 (1966); Williamson v. Lee Optical Co. 348 U. S. 483, 75 S. Ct. 461, 99 L. ed. 563 (1955). As the trial court found, the legislature could reasonably determine that the public interest does not require open wholesaling of wines and beers at this time due to differences

to the enforcement or construction of Minn. Laws 1973 Chapter 664 Section 2 (Minn. Stat. Section 340.114)." Dept. of Administration, Rules and Regs. of the Dept. of Liquor Control, 1970 ed. p. 9.

in requirements for the sale of wines and beers, the absence of significant competition between wines and beers on the one hand and distilled spirits on the other, and the greater number of wholesalers selling wines and beers. The Benz case, heavily relied upon by plaintiffs, is distinguishable, for there the court recognized the broad prerogatives of the legislature in making classifications but failed to discern the purpose of the legislature in separating wine and distilled spirits at the wholesale level.

Finally we come to what we regard as the most serious challenge asserted. Section 2 of the act makes it unlawful for every distiller who chooses to offer his distilled spirits to one Minnesota wholesaler to refuse to sell to all other licensed wholesalers on an equal basis and, it is asserted by necessary implication, creates a presumption that every such refusal except for "arrears on payments for past purchases" is a violation justifying criminal sanctions.

Plaintiffs contend that this provision is an arbitrary and unreasonable exercise of state police power in violation of due-process guarantees. While conceding that the state may legislate to promote the economic welfare of its citizens, plaintiffs, arguing broadly, attack this provision as one having no counterpart in the economic regulation of any other legitimate business and as an oppressive, unwise, and impractical means of reducing consumer prices, a result, they insist, which has neither been proven nor found by the trial court. More pointedly and with more merit, they argue that this interference with their freedom to deal with respect to their property is overbroad because they claim there are "many legitimate non-monopolistic legally justifiable business reasons" justifying a distiller's refusal to offer to sell to a particular wholesaler which have no bearing on the purpose and objective of the act to promote competition and price reduction to consumers. Enumerated examples of such business reasons are refusing to deal with a wholesaler of unsavory character, with one who employs so-called "footballing" tactics to injure competitors, or with one who has a poor record of promoting the

sale of a distiller's brand, or with a wholesaler who is owned by a distiller so that the effect of dealing with him is comparable to "putting the fox in the henhouse." In view of these claimed potential, justifiable reasons to refuse to deal, it is argued that "the act in effect creates compulsory, nonterminable franchises for every licensed wholesaler." Additionally, it is argued that the claimed conclusive presumption inherent in § 2 making every refusal to deal except for credit reasons unlawful is unreasonable and arbitrary because "[a] law which closes a litigant's mouth in court is as bad as a law which deprives him of access to it." Twin City Candy & Tobacco Co. Inc. v. A. Weisman Co. 276 Minn. 225, 231, 149 N. W. 2d 698, 702 (1967). This two-pronged attack thus challenges not only the legislature's power to abolish sole distributorships but the appropriateness of the means chosen to do so.

As a constitutional principle, it is well established that the freedom to contract with respect to one's property and in the conduct of a lawful business to select the party with whom one chooses to do so is a part of the liberty protected by the due-process clauses of the State and Federal Constitutions. But, as declared in Nebbia v. New York, 291 U. S. 502, 523, 54 S. Ct. 505, 510, 78 L. ed. 940, 948 (1934):

"* * * [N]either property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest."

It is elementary that the state by virtue of its sovereignty may regulate private conduct for public benefit. In the field of economic regulation, without burdening this opinion by a historical recital of the changing attitude of the nation's courts, it is settled that the legislature is free to adopt whatever economic policy it

deems will promote the public good.[17] Where an economic regulation is enacted, the guarantee of due process demands only (1) that the act serve to promote a public purpose; (2) that it not be an unreasonable, arbitrary, or capricious interference; and (3) that the means chosen bear a rational relation to the public purpose sought to be served. Bearing in mind the legislative history of liquor regulation in this state, there exists no basis to invalidate the exercise of police power for the economic purposes of preventing monopolies and promoting competition to lower prices to consumers. Twin City Candy & Tobacco Co. Inc. v. Weisman Co. *supra.* The critical question presented is not whether the legislative goal is in the public interest, but rather whether the act is an unreasonable and arbitrary interference with the liquor industry and whether the particular means chosen to achieve the legislative goal infringes upon the distillers' constitutional freedom to refuse to deal with all licensed wholesalers on an equal basis. As previously noted, arguments that this provision is unreasonable, arbitrary, or capricious because it singles out the liquor industry and is oppressive, unwise, and impractical are arguments properly addressed to the legislature.

---

[17] In Ferguson v. Skrupa, 372 U. S. 726, 729, 83 S. Ct. 1028, 1030, 10 L. ed. 2d 93, 96 (1963), the court said: "* * * Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. There was a time when the Due Process Clause was used * * * to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy. * * *

"The doctrine * * * —that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws."

See, also, McCloskey, *Economic Due Process and the Supreme Court: An Exhumation and Reburial,* 1962 Supreme Court Review 34; Hetherington, *State Economic Regulation and Substantive Due Process of Law,* 53 Nw. U. L. Rev. 13, 53 Nw. U. L. Rev. 226.

Nor can we agree that the act in effect creates a compulsory, nonterminable franchise in wholesalers. It neither requires nor compels every distiller, even though licensed, to offer his product to Minnesota wholesalers. Nor does it in any way infringe upon a Minnesota wholesaler's existing right to deal with or buy from a distiller or to deal with or sell to retailers in open, unfettered competition with each other. Its thrust is the elimination of the right to obtain exclusive dealerships by prohibiting all discrimination of distillers among wholesalers and compelling those who offer to sell their brands of liquor to one Minnesota wholesaler to do so to all on an equal basis. Under the existing system, the control of distribution of manufactured liquor is necessarily vested in the distiller or manufacturer. The legislature could readily determine that a distiller's refusal to deal with other than one wholesaler, or a wholesaler's inability to buy from all who bring liquor into the state, effectively controls the availability of various brands of liquor to the retailer and the ultimate consumer; that supply and demand for a particular brand of liquor affects its price; and that such control over distribution necessarily affects the ultimate price to Minnesota consumers. It is hardly debatable that the legislature could thus reasonably conclude, as the Liquor Study Commission did, that exclusive distributorships portend monopolistic practices, inevitably limit intrabrand competition, and ultimately affect the price to consumers. Equally sound, we believe, is our conclusion that prohibiting discrimination by restricting refusals to deal on an equal basis with all wholesalers is not an arbitrary and unreasonable interference with the liquor industry and bears a rational, if not a substantial, relationship to the economic welfare of the public.

However, the most difficult question remains, namely, whether every prohibited refusal to deal amounts to a constitutionally impermissible conclusive presumption. Assuming that a conclusive presumption is intended, we confront plaintiffs' contention that this is a denial of procedural due process no different from the irrebuttable presumptions denounced in Twin City Candy

& Tobacco Co. Inc. v. A. Weisman Co. *supra,* and recently by the United States Supreme Court in Vlandis v. Kline, 412 U. S. 441, 93 S. Ct. 2230, 37 L. ed. 2d 63 (1973), and Cleveland Board of Education v. LaFleur, 414 U. S. 632, 94 S. Ct. 791, 39 L. ed. 2d 52 (1974). In Weisman, we held unconstitutional a legislative attempt to prohibit sales of cigarettes below cost on the ground that a legislative declaration exclusively presuming all sales below cost to be with intent to injure a competitor or destroy competition was unjustified in fact and denied procedural due process. In Vlandis, the United States Supreme Court invalidated a Connecticut statute which employed a conclusive presumption of nonresidency for the purpose of determining an applicant's qualification for lower tuition charges at the state university, holding (412 U. S. 452, 93 S. Ct. 2236, 37 L. ed. 2d 71) :

"* * * [I]t is forbidden by the Due Process Clause to deny an individual the resident rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination."

In LaFleur, the court, relying on Vlandis, reaffirmed its view that irrebuttable presumptions have long been disfavored by the due-process clause. There, the court invalidated regulations promulgated by school boards which compelled teachers to take unpaid maternity leaves by employment of a conclusive presumption that every pregnant teacher in the fifth or sixth month of pregnancy is physically incapable of continuing.[18] In each of these cases, including the Weisman case, the constitutionality of

___

[18] See, also, Bell v. Burson, 402 U. S. 535, 91 S. Ct. 1586, 29 L. ed. 2d 90 (1971); Stanley v. Illinois, 405 U. S. 645, 92 S. Ct. 1208, 31 L. ed. 2d 551 (1972); Carrington v. Rash, 380 U. S. 89, 85 S. Ct. 775, 13 L. ed. 2d 675 (1965); Leary v. United States, 395 U. S. 6, 89 S. Ct. 1532, 23 L. ed. 2d 57 (1969); Turner v. United States, 396 U. S. 398, 90 S. Ct. 642, 24 L. ed. 2d 610 (1970).

the law as applied was challenged and the conclusive presumption mandated was found to be not necessarily true in fact.[19]

We are not persuaded that the legislature's classifying every refusal to deal as an intentional discrimination violated due process, for we are not prepared to hold that such a classification on its face is not necessarily true in fact or that it unreasonably or arbitrarily infringes on a distiller's freedom to contract. Unlike the Weisman case, which prohibited all below-cost sales including sales to consumers, c. 664 regulates only sales by distillers to wholesalers, whose sole reason to purchase is resale, not consumption. Furthermore, unlike Weisman, it is significant that the presumption employed is not designed to establish every refusal as intentionally destructive of competition. Although the ultimate goal of the act, read in its entirety, is to promote competition, the primary intent of the challenged provisions is to eliminate exclusive dealerships by prohibiting predatory discrimination by distillers. The essence of an alleged violation is therefore intentional discrimination, not intentional injury to other competing distillers. The latter mischief is effectively prevented at the distillers' level by the requirement of price affirmation, which is not, and cannot be, challenged because an identical requirement was held constitutional in Joseph E. Seagram & Sons, Inc. v. Hostetter, *supra.*

In effect, what the legislature has done is to classify all noncredit refusals to sell as discriminatory, tending to adversely affect open intrabrand competition. Plaintiffs hypothetically claim that a particular refusal may be justifiably discriminatory for other reasons which can have no bearing on such competition. In other words, it is argued that a distiller charged with a violation has a constitutional right to rebut the presumption of un-

---

[19] The proper reach or scope of the constitutional standard denouncing the use of irrebuttable presumption is far from settled since we find no cases invalidating its use in the area of economic regulations except for Twin City Candy & Tobacco Co. Inc. v. A. Weisman Co. 276 Minn. 225, 149 N. W. 2d 698 (1967).

lawful discrimination by presenting evidence that such refusal was justified and did not lessen or destroy intrabrand competition.

This, of course, raises a question of the constitutionality of the act as applied to an assumed state of facts, a question which need be answered only when presented in a proper case.[20] The answer to the challenge of overbreadth in our opinion is that the legislature, in enacting this provision in pursuit of an economic goal, reasonably could declare that in order to abolish exclusive distributorships and to promote intrabrand competition all unjustified refusals to deal shall be deemed discriminatory, since any discrimination in fact necessarily frustrates achieving that ultimate goal and its consequent anticipated liquor price reductions. Furthermore, the legislature could have determined that allowing other business reasons to be asserted would require establishing rigid statutory standards more appropriately left to enforcement regulations delegated to the commissioner. In answer to the question presented on this appeal, it is sufficient to observe that the legislature could find that specifying credit reasons as justifying a refusal to deal will not significantly or unfairly impair or deprive distillers of their right, indeed their opportunity, to market their products in this state. To assert that a wholesaler's "unsavory" reputation or his employment of the unfair trade price of "footballing" to destroy competition of

---

[20] By declining to answer, we do not intimate that a legislative statute by presuming rather than proving may foreclose a distiller charged with a violation from interposing as a defense that his refusal to deal was occasioned by circumstances unrelated to predatory discrimination but occurred for valid reasons, such as a wholesaler's adulteration of a distiller's product or false branding or other like illegal or tortious conduct. Any enforcement of the act by regulations which would employ an irrebuttable presumption is constitutionally offensive to due process as held by Cleveland Board of Education v. LaFleur, 414 U. S. 632, 94 S. Ct. 791, 39 L. ed. 2d 52 (1974); and Twin City Candy & Tobacco Co. Inc. v. A. Weisman Co. 276 Minn. 225, 149 N. W. 2d 698 (1967), and will, we assume, be avoided.

equivalent brands justifies refusal not only ignores the liquor commissioner's regulatory power to revoke wholesalers' licenses for just cause, including trade practices condemned by Minn. St. 325.04, but also threatens to reinvest the distiller with the control he can now exercise over a wholesaler. To assert that wholesaler's inadequate promotion of a distiller's brand justifies refusal is to ignore the reality of both the wholesaler's and retailer's unrestrained freedom to refuse to buy. A distiller's compulsion to offer to sell to a wholesaler owned by a competing distiller is more difficult to evaluate. However, the record shows that both leading wholesalers, Ed Phillips & Sons and Johnson, appear to have suffered no prejudice in marketing their own brands along with competing brands supplied them by their respective distillers.

This analysis, we are satisfied, supports our conclusion that the act is constitutionally valid. To paraphrase the Hostetter court, and without intimating any limitation as to defenses which may be interposed in enforcement, we cannot say that the legislature acted unconstitutionally when it determined to abolish exclusive dealerships; and only by declaring a presumptive limitation on prohibited refusals to deal, coupled with the "no higher than the lowest price" requirement, could the grip of liquor distillers and wholesalers on Minnesota liquor prices be loosened.[21]

We emphasize that our decision upholds the constitutionality of c. 664 only on its face. Plaintiffs' fears that constitutional infirmities will appear upon enforcement must of course await judicial review when and if they arise.

Affirmed.

The original opinion filed on April 4, 1975, is hereby withdrawn and this opinion substituted. The petition for rehearing is denied and the petition for an order for a stay is also denied.

MR. CHIEF JUSTICE SHERAN took no part in the consideration or decision of this case.

---

[21] Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U. S. 35, 86 S. Ct. 1254, 16 L. ed. 2d 336 (1966).

52

MR. JUSTICE OTIS concurs in the substituted opinion and withdraws his dissent.