JOHNSON BROTHERS WHOLESALE LIQUOR COMPANY, Appellant,

v.

Joseph NOVAK, Liquor Control Commissioner of the State of Minnesota, Respondent.

MINNESOTA DISTILLERS, INC., Respondent,

v.

Joseph NOVAK, Liquor Control Commissioner of the State of Minnesota, Respondent,

and

Johnson Brothers Wholesale Liquor Company, intervenor, Appellant,

Famous Brands, Inc., intervenor, Respondent.

GRIGGS, COOPER AND CO., intervenor and third party plaintiff, Respondent,

v.

MAJOR BRANDS, DELAWARE, LTD., third party defendant, Respondent.

No. 49856.

Supreme Court of Minnesota.

May 30, 1980.

Shanedling, Phillips, Gross & Aaron and Felix M. Phillips, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., and Alan H. Maclin, Sp. Asst. Atty. Gen., St. Paul, for Novak.

Moore, Costello & Hart and Robert J. Albrecht, St. Paul, for Minnesota Distillers, Inc.

Leonard, Street & Deinard and Lowell J. Noteboom, Minneapolis, for Famous Brands, Inc.

Maun, Hazel, Green, Hayes, Simon & Aretz and Lawrence J. Hayes, St. Paul, for Griggs, Cooper and Co.

Doherty, Rumble & Butler and Eugene M. Warlich, St. Paul, for Major Brands, Delaware, Ltd.

Heard before ROGOSHESKE, KELLY and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This is an appeal from a declaratory judgment action in consolidated cases before the district court. Johnson Brothers Wholesale Liquor Company (Johnson Brothers) initiated the first action against the Liquor Control Commissioner (Commissioner) in Ramsey County. Johnson Brothers sought an order directing the Commissioner to enforce a "rule" against Minnesota Distillers, Inc. Minnesota Distillers initiated the second action in Todd County in an attempt to block enforcement of the rule. Johnson Brothers intervened in that action. The district court granted the Commissioner's motion for a discretionary change of venue to Ramsey County. Various motions were made before the Ramsey County district court including Minnesota Distiller's motion to consolidate the two actions. On September 8, 1978, the actions were submitted to Judge Schultz by stipulation for final decision. On December 13, 1978, the district court entered declaratory judgment in favor of Minnesota Distillers. The court concluded the Commissioner's "rule" was invalid because it was not adopted according to the Minnesota Administrative Procedures Act's (MAPA) statutory rulemaking procedures and because it exceeded the Commissioner's statutory authority. We affirm the decision of the district court on the ground that the "rule" was not adopted pursuant to statutory rulemaking procedures. We find it unnecessary to reach the issue of whether a validly adopted rule would exceed the Commissioner's statutory authority.

In order to more fully grasp the background of these cases, a brief description of certain statutes governing the liquor industry is necessary.

Neither Minnesota manufacturers and wholesalers nor out-of-state manufacturers and wholesalers may import intoxicating liquor into this state without a license.[1] Furthermore, importation of any brand of intoxicating liquor by a licensed wholesaler or manufacturer is forbidden unless the brand label is registered and approved by the Commissioner.[2] It is unlawful for a licensed importer of liquor to fail to offer to sell their products on an equal basis to all Minnesota wholesalers and manufacturers.[3]

The "rule" in question prohibits importation of a registered brand of intoxicating liquor for sale in Minnesota by an out-of-state wholesaler to a Minnesota wholesaler without the consent of the brand owner, usually a distiller or winer. Brand owners or manufacturers are termed primary sources and out-of-state wholesalers are termed secondary sources.

In March of 1974, the Commissioner deviated from its practice of requiring a primary source's permission for importation of a registered brand of intoxicating liquor by a secondary source when he permitted Minnesota Distillers, a secondary source, to import into Minnesota a quantity of Drambuie Liqueur and Mateus Rose wine from an Oklahoma City liquor wholesaler, Major Brands, Limited. Major Brands and Minnesota Distillers were duly licensed importers of intoxicating liquor. When Johnson Brothers, another wholesaler and the exclusive distributor of Drambuie Liqueur in Minnesota, discovered this deviation, it initiated the first declaratory judgment action seeking enforcement of the "rule" on April 3, 1974. Later, Minnesota Distillers initiated a suit on April 24, 1974 after primary sources refused to consent to further importation of certain brands of distilled spirits by Major Brands. The cases were consolidated on May 24, 1974 and a decision on their merits was deferred as a result of assurances that the Commissioner would adopt a rule in accordance with statutory rulemaking procedures. On February 7, 1976, the Commissioner of Public Safety succeeded by statute to the powers and duties of the Liquor Control Commissioner. Minn.Stat. §§ 299A.02 (subd. 2), 340.081 (1978).

In the summer of 1977, the Commissioner of Public Safety (Commissioner) proposed the repeal of Liquor Rule 72 instead of proposing the adopting of a rule concerning

1. Minn.Stat. § 340.11 (subd. 2) (1978) provides:
   Manufacturers' and wholesalers' licenses shall be issued by the commissioner of public safety.
   A manufacturer's or wholesaler's license shall include the right to import. The business of manufacturer and wholesaler may be combined and carried on under one license issued therefor.
   Minn.Stat. § 340.113 (subd. 1) (1978) provides:
   No intoxicating liquor or ethyl alcohol shall be shipped into this state by any distiller, rectifier, winer, or wholesale distributor, or any other person, to any licensed Minnesota manufacturer or wholesale dealer unless and until such distiller, rectifier, winer, wholesale distributor, or such other person has secured a license from the commissioner of public safety permitting him so to do.

2. Minn.Stat. § 340.62 provides in part:
   No licensed manufacturer or wholesaler shall manufacture or import for sale within the state, any brand of intoxicating liquor such as distilled spirits and wine, or any distilled or vinous liquor designated as a specialty, wherein such liquor is ready for sale for beverage purposes without further processing, unless the label of such brand has been registered with and approved by the commissioner. The commissioner shall hereinafter establish a register for such brand labels, which labels shall be acceptable under the following conditions:
   (1) No brand of intoxicating liquor as hereinbefore described shall be manufactured or imported for sale within the state after the passage of this act unless the brand label thereof has been submitted to and approved by the commissioner. The fee for such registration shall be $10 for each brand label.

3. Minn.Stat. § 340.114 (1978). We upheld this legislation as a reasonable exercise of the police power in *Federal Distillers, Inc. v. State*, 304 Minn. 28, 229 N.W.2d 144, *appeal dismissed, Heaven Hill Distilleries Inc., v. Novak*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). The statute excludes malt beverage and wines.

the legality of secondary source importation of registered brands without the consent of primary sources.

Liquor Rule 72 is based on Minn.Stat. § 340.62[4] which prohibits importation of intoxicating liquor by a licensed wholesaler or manufacturer unless the brand label is registered and approved by the Commissioner. The statute does not expressly limit the right to register a brand label to the manufacturer (the primary source). In contrast, Liquor Rule 72 provides in pertinent part: "The brand label will not be registered unless it is ascertained that the proposed registrant is the owner of the label, or has been assigned the brand label registration permission in writing by the brand owner." The Hearing Examiner recommended that Liquor Rule 72 not be abolished. The Commissioner acquiesced in this recommendation and ordered that Liquor Rule 72 be retained.

After a delay of more than four years during which the Commissioner failed to adopt a rule which would moot these cases, the district court concluded that the "rule" was invalid because it was never adopted in accordance with statutory rulemaking procedures. Minn.Stat. § 15.0411 et seq. (1978). The court held, in the alternative, that the practice itself exceeds the Commissioner's statutory authority because licensed out-of-state wholesalers have a right to import registered brands of intoxicating liquors to licensed Minnesota liquor wholesalers without the consent of the manufacturers of those registered brands.

The exact origin of the Commissioner's practice or "rule" requiring primary source consent before allowing importation of a registered brand of intoxicating liquor is not disclosed. At the initial hearing before Judge Schultz on April 13, 1974, Assistant Liquor Control Commissioner John A. Muer testified that the practice was observed throughout the 18-year period of his employment with the Commission. Affidavits of Chief Deputy Attorney General Byron E. Starns, Secretary of State Arlen I. Erdahl, and Commissioner of Administration Rich-

ard L. Brubacher dated May 16, 1974 indicate that the Commissioner's "rule" was never filed with the Secretary of State or the Commissioner of Administration or approved by the Attorney General as required by statutory rulemaking procedures.

▄ Johnson argues that even though the "rule" was never formally adopted under the 1945, 1957, 1963 or 1976 revisions of the MAPA, the Commissioner "substantially complied" with the 1976 version of the MAPA's rulemaking procedures (Minn.Stat. §§ 15.0412 to 15.0421 (1978)) when hearings were conducted on the advisability of repealing Liquor Rule 72. As stated above, Liquor Rule 72 prohibits registration of a brand label by anyone other than a brand owner or a person with the brand owner's written permission to register the brand label. If Liquor Rule 72 had been repealed, the effect would have been to undercut the conceptual basis of the "rule" prohibiting importation of registered brands of intoxicating liquors without primary source consent because it rested on the status of primary sources as the only persons permitted to register brand labels in Minnesota. Therefore, Johnson argues that the 1977 hearings "unquestionably constituted a clear and intentional readoption of the Commission's continuing long-standing practice, under conditions of full statutory hearing under the Minnesota Administrative Procedure Act." Thus, by rejecting the repeal of a rule which if repealed would have undercut the conceptual basis of the practice, the Commissioner substantially complied with Minn.Stat. §§ 15.0412 (subd. 4) and 15.0413 (1978) requiring notice, hearing, approval of the rule by the attorney general and filing of the rule with the secretary of state and publication by the secretary of administration.

Johnson derives the substantial compliance doctrine from Auerbach, *Administrative Rulemaking in Minnesota*, 63 Minn.L. Rev. 151 (1979). According to this doctrine, a reviewing court should:

4. *See* note 3 *supra*.

Examine the extent to which the agency deviated from the statutory requirements, whether the deviation was inadvertent or a part of a purposeful scheme to avoid compliance, and the extent to which that non-compliance disabled those who might have wanted to from participating in the rule making or structuring their affairs to take account of its existence. Auerbach, *Administrative Rulemaking in Minnesota*, 63 Minn.L.Rev. 151 at 215 (1979) (quoting Banfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process*, 60 Iowa L.Rev. 781, 834 (1975)).

However, the MAPA, unlike the model act, does not contain a provision that a rule is valid where adopted in substantial compliance with procedural requirements. Even if this court were inclined to read the doctrine into the MAPA through an application of the harmless error doctrine, this is not the appropriate case in which to do so. There has been no compliance with statutory rulemaking procedures, substantial or otherwise. Johnson Brothers admits that no attempt was ever made to formally adopt the "rule" under the 1945, 1957, 1963 or 1976 revisions of the MAPA. Thus, were this court to hold that the Commissioner substantially complied with rulemaking procedures in this case, we would essentially hold that the failure to adopt non-rule A is the adoption of rule A. Rule A would never be approved by the attorney general, published in the state register or filed with the secretary of state. Therefore, we decline to hold that the "rule" was adopted in substantial compliance with the MAPA.

Johnson Brothers' second argument that the Commissioner's practice at issue in this case is not a "rule" within the meaning of the MAPA is also without merit. Minn. Stat. § 15.0411 (subd. 3) (1978) defines "rule" as follows:

"Rule" includes every agency statement of general applicability and future effect, including the amendment, suspension, or repeal thereof, made to implement or make specific the law enforced or administered by it or to govern its organization or procedure, but does not include (a) rules concerning only the internal management of the agency or other agencies, and which do not directly affect the rights of or procedure available to the public; or (b) rules of the commissioner of corrections relating to the internal management of institutions under his control and those rules governing the inmates thereof prescribed pursuant to section 609.105; or (c) rules of the division of game and fish published in accordance with section 97.53; or (d) rules relating to weight limitations on the use of highways when the substance of such rules is indicated to the public by means of signs; or (e) opinions of the attorney general.

Johnson argues that the practice "concern[s] only the internal management of the agency * * * and * * * [does] not directly affect the rights of * * * the public." Minn.Stat. § 15.0411 (subd. 3) (1978). This exception is not applicable. It has been interpreted as involving employee vacation policies, work schedules and standards, and promotion policies rather than statements of general applicability defining the law governing the agency. 63 Minn.L. Rev. at 241–2.

■ Neither does Johnson Brothers persuade us that the Commissioner's practice is merely a method of enforcing existing regulations and thus akin to a "directive" rather than an interpretive rule. In *Wacha v. Kandiyohi County Welfare Bd.*, 308 Minn. 418, 242 N.W.2d 837 (1976), we characterized an internal office memo as a directive rather than a rule because it merely reminded county welfare agencies of validly promulgated Social Security regulations. Johnson Brothers cannot point to any such existing regulations. In effect the Commissioner's practice is a regulation interpreting Minn.Stat. §§ 340.11, 340.113, and 340.62 (1978).[5] Interpretive rules fall within the statutory definition of "rule." *McKee v. Likens*, 261 N.W.2d 566, 577–8 (Minn.1977).

---

5. For the text of these statutes, *see* Notes 1 and 2, *supra.*

The Commissioner may not continue the practice of requiring primary source consent before allowing a licensed out-of-state wholesaler to import a registered brand of intoxicating liquor to a licensed Minnesota wholesaler because the practice is invalid for lack of compliance with MAPA rulemaking procedures. Minn.Stat. § 15.0417 (1978).

The judgment of the district court is affirmed.