**CASANOVA BEVERAGE CO., INC., Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent (C3–91–2319), Appellant (C3–91–2336),**

**Seagram Sales Corporation, a/k/a The House of Seagram, Appellant (C3–91–2319), Respondent (C3–91–2336).**

**Nos. C3–91–2319, C3–91–2336.**

Court of Appeals of Minnesota.

June 9, 1992.

Review Denied Aug. 4, 1992.

Cort C. Holten, Jeanette A. Frederickson, Chestnut & Brooks, P.A., Minneapolis, for Casanova Beverage Co., Inc.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, Deputy Atty. Gen., St. Paul, for Com'r of Public Safety respondent C3–91–2319, appellant C3–91–2336.

Richard G. Wilson, Mary R. Vasaly, Minneapolis, for appellant C3–91–2319, respondent C3–91–2336.

Considered and decided by LANSING, P.J., and NORTON and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Appellants challenge the trial court's interpretation of Minnesota's liquor control laws as requiring the sale of liquor to a wholesaler even though that wholesaler intends to ship the liquor to another state for sale in that state. We reverse.

## FACTS

Respondent Casanova is a liquor wholesaler with licenses and places of business in both Minnesota and Wisconsin. Appellants are the Minnesota Department of Public Safety, which regulates the liquor industry, and Seagram, a liquor manufacturer and importer.

After a 1987 court decision, Wisconsin modified its system of liquor franchising and Seagram selected another wholesaler as its exclusive representative in Wisconsin. It became difficult, thereafter, for Casanova to obtain Seagram products for resale in Wisconsin.

In 1989, Casanova obtained a Minnesota liquor wholesaler license. Since then, it has been buying a substantial amount of Seagram products for delivery in Minnesota and then shipping the liquor to its Wisconsin warehouse for resale in Wisconsin.

In August 1990, the Wisconsin Department of Revenue instructed Casanova to cease importing liquor from Minnesota and then notified all Wisconsin wholesalers that it was a violation of Wisconsin law to purchase liquor out-of-state for resale in Wisconsin. The same month, the Minnesota Department of Public Safety issued a memorandum stating that Minnesota law requires that liquor wholesalers sell only within the state of Minnesota.

Casanova first sought a temporary restraining order in Wisconsin against enforcement of this interpretation of Minnesota law. The TRO was granted and Casanova then sued Seagram in Minnesota. Seagram removed that case to federal court, where a preliminary injunction against Seagram was denied. The federal court then allowed Casanova to dismiss its federal case without prejudice in order to bring this declaratory judgment action against the Minnesota Department of Public Safety. In this lawsuit, in which Seagram has been allowed to intervene, the trial court granted summary judgment to

Casanova. The Minnesota Department of Public Safety and Seagram appeal, challenging the trial court's interpretation of the Minnesota liquor laws.

## ISSUE

Did the trial court err in granting summary judgment to Casanova based on the conclusion that Minn.Stat. ch. 340A requires manufacturers of liquor to sell liquor to distributors even if that liquor is intended for shipment to and resale in another state?

## ANALYSIS

Respondent Casanova requests that a portion of appellant state's appendix be stricken because those pages were deposition exhibits that were not filed with the trial court. Appellant state requests that the record below be "corrected." Because the exhibits were not actually before the trial court, they are not part of the record on appeal, Minn.R.Civ.App.P. 110.01, and a motion to "correct" is not appropriate. *See* Minn.R.Civ.App.P. 110.05. Casanova's motion to strike is granted.

In reviewing a grant of summary judgment, the role of the appellate courts is

> to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

Casanova argues that Seagram must provide it with liquor for transfer to and sale in Wisconsin.

Minn.Stat. § 340A.307, subd. 1 (1990), provides that:

> All licensed importers must offer for sale on an equal basis to all licensed wholesalers * * * all intoxicating liquor brought into the state of Minnesota.

Casanova argues that this provision is absolute and requires manufacturers to provide the liquor a wholesaler orders regardless of destination. Appellants interpret the provision as meaning that manufacturers must provide liquor to respondent and other wholesalers only if the li-

quor is for use in Minnesota. We agree with appellants.

As appellants point out, there can be no benefit to Minnesota in requiring producers to sell liquor to wholesalers solely for shipment out of state. Casanova argues, however, that the primary purpose of the Minnesota liquor laws was to transfer power from the distillers to the wholesalers. For authority, Casanova relies upon the following statement by the Minnesota Supreme Court:

> [The law's] effect on this state's licensed components of the liquor industry is to prohibit discrimination by distillers in favor of one licensed wholesaler against another; *to transfer control over the distribution and sale of the various brands of liquor from the distillers to the wholesalers;* and to promote a wider distribution of liquor brands throughout the state by affording retailers the opportunity to purchase a variety of brands from competing wholesalers.

*Federal Distillers, Inc. v. State,* 304 Minn. 28, 38, 229 N.W.2d 144, 153 (1975) (emphasis added).

The supreme court, however, also stated in *Federal Distillers* that the new system was

> designed to abolish exclusive wholesale distribution of liquor and thereby to promote price competition by seeking to eliminate actual or potential monopolistic practices and price fixing by distillers and wholesalers.

*Id.* at 35, 229 N.W.2d at 152. Such objectives by the Minnesota legislature do not suggest an interpretation requiring that liquor be made available in Minnesota to be shipped into Wisconsin for sale there.

Further, Minn.Stat. § 340A.310 (1990) provides that:

> A wholesaler may sell intoxicating liquor * * * only to municipal liquor stores, government instrumentalities, or holders of alcoholic beverage licenses issued under this chapter.

Casanova argues that this provision is not relevant because Casanova is only transferring the product to its Wisconsin

warehouse, not selling the product to itself, and that any resale in Wisconsin is of no concern to Minnesota. Appellants argue, however, that Minn.Stat. § 340A.307, subd. 1, the provision upon which Casanova's claim rests, only requires equal offers of sale to wholesalers where the liquor is bought for resale to licensees under chapter 340, which means to Minnesota retailers. We agree because Minn.Stat. § 340A.101, subd. 28 (1990), defines "wholesaler" as

> a person who sells alcoholic beverages to persons to whom sale is permitted under section 340A.310, from a stock maintained in a warehouse in the state.

The parties also disagree on the meaning of Minn.Stat. § 340A.305 (1990), which requires all licensed wholesalers to have warehouse space inside the state, to unload liquor imported into the state into this warehouse, and to distribute the liquor only from this warehouse. The section also provides the following exceptions:

> [A] manufacturer or United States importer * * * may authorize * * * a Minnesota-licensed * * * wholesaler to purchase intoxicating liquor for direct shipment to another state, or may appoint a Minnesota-licensed * * * wholesaler as its agent to sell or deliver intoxicating liquor to purchasers in other states.

Minn.Stat. § 340A.305.

Casanova claims that it unloads all liquor in its Minnesota warehouse, that it does not make direct shipments to Wisconsin, and that the law cannot allow the manufacturers to control the wholesalers in this fashion. Appellants allege that this provision makes any out-of-state shipments discretionary with the manufacturer or importer. Noting the permissive "may," we agree.

As the supreme court explained in *Federal Distillers*, the purposes of Minn.Stat. § 340.307, subd. 1, was to promote competition and to reduce prices to consumers by abolishing exclusive wholesale distribution of liquor and by eliminating monopolistic practices and price fixing, whether by distillers or wholesalers. *Federal Distillers*, 304 Minn. at 35, 229 N.W.2d at 152. The

legislature made a necessary exception to its restrictions on manufacturers' prerogatives where the liquor is intended for shipment out of the state of Minnesota.

In a case similar to this, the Oklahoma Supreme Court said that since a state has no legitimate interest in regulating transactions outside its borders,

> [t]he matter then becomes one of contract between the non-resident seller and the Oklahoma wholesaler insofar as Oklahoma law is concerned. If the non-resident seller wishes to sell to an Oklahoma wholesaler with the knowledge that the product is to be resold outside of Oklahoma, that is the prerogative of the non-resident seller. Likewise, if the non-resident seller does not desire to enter into such a transaction, that is also its prerogative.

*Central Liquor v. Oklahoma Alcoholic Beverage Control Bd.*, 640 P.2d 1351, 1355 (Okla.1982).

The reasonableness of the above interpretation of chapter 340A is further strengthened by the principle that, under state law, "a statute must be construed to save its constitutionality." *Federal Distillers*, 304 Minn. at 43, 229 N.W.2d at 156. If we were to read the statute at issue here as Casanova suggests, constitutional questions would arise.

The twenty-first amendment to the United States Constitution provides that:

> The transportation or importation into any State * * * for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. Const. amend. XXI, § 2. The Supreme Court has interpreted this section as giving the states "wide latitude to regulate the importation and distribution of liquor within their territories." *Brown–Forman Distillers v. New York State Liquor Authority*, 476 U.S. 573, 584, 106 S.Ct. 2080, 2087, 90 L.Ed.2d 552 (1986). Nevertheless, "the Twenty-first Amendment did not entirely remove state regulation of alcohol from the reach of the Commerce Clause," *id.*, and

> [t]he Commerce Clause operates with full force whenever one State attempts to

regulate the transportation and sale of alcoholic beverages destined for distribution and consumption in * * * another State.

*Id.* at 585, 106 S.Ct. at 2087.

The United States Supreme Court has held:

> When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. * * * [T]he critical consideration is the overall effect of the statute on both local and interstate activity.

*Id.* at 579, 106 S.Ct. at 2084 (citations omitted). In other words, it is unconstitutional for a state to " 'project its legislation into [other States].' " *Id.* at 583, 106 S.Ct. at 2086 (quoting *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521, 55 S.Ct. 497, 499, 79 L.Ed. 1032 (1935)). This is true whether a state's legislation "regulates" in the traditional sense of the word or "de-regulates," as does the Minnesota statute.

The parties also disagree on the meaning of Minn.Stat. § 340A.307, subd. 2(e), which prohibits

> [a] sale conditioned on an agreement which restricts the wholesaler * * * with respect to customers, area for distribution, or resale price, or which otherwise restrains the wholesaler * * * from competing in trade and commerce.

Casanova believes that this language is unconditional. Appellants interpret this provision as referring to customers, areas for distribution, and restraints on competition in Minnesota. As we have already indicated, the intent of the legislature was to promote competition and lower prices in Minnesota. The legislature did not intend to deregulate liquor intended for other states and could not constitutionally have done so. If Wisconsin is to have competition among liquor wholesalers, the Wisconsin legislature must act.

## DECISION

The Minnesota liquor control laws should not be interpreted to require liquor manu-facturers and importers to sell liquor to a distributor if that liquor is intended for shipment to and sale in another state.

Reversed.